J. D. WALTHOUR ET AL *v.* L. JULIAN ALEXANDER
ET AL

5-4335                                    421 S. W. 2d 613

Opinion delivered December 4, 1967

[Rehearing denied December 18, 1967.]

*H. B. Stubblefield,* for appellant.

*Thomas J. Bonner,* for appellee.

GEORGE ROSE SMITH, Justice. This is a zoning dispute. The appellee Alexander owns a triangular piece of property on the southwest corner of the intersection of Van Buren and Club Road in Little Rock. Alexander uses the little building on the property as a pick-up and delivery station for patrons of his laundry business. In 1965 the Board of Zoning Adjustment granted Alexander's application for permission to add 300 square feet to his building, making it about 850 square feet in all. This suit to review the Board's action was brought by the appellants, neighboring landowners who had opposed the issuance of the permit. The chancellor sustained the Board. For reversal the appellants contend that the Board's action was (I) illegal, (II) arbitrary, and (III) barred by limitations.

I. *Illegality.* Apparently the Board reclassified Alexander's property as "F Commercial" back in 1959. The appellants insist that under the governing statute and the Little Rock zoning ordinance (which was marked Exhibit 11 at the trial) the Board had no power to rezone the property and that therefore the permit now in dispute violated a zoning restriction applicable to nonconforming uses. The appellee's answer to this contention is that the zoning ordinance (as well as sev-

eral allied-exhibits) was not put in evidence at the trial and so cannot be considered here.

We do not take judicial notice of city ordinances. *Campbell* v. *City of Hot Springs*, 232 Ark. 878, 341 S. W. 2d 225 (1960). Nor can we consider a document that was not received in evidence even though it may have been in the courtroom, as, for example, an exhibit to a pleading. *Wright* v. *Midland Valley R. R.*, 111 Ark. 196, 163 S. W. 1151 (1914); *National Annuity Assn.* v. *Mc-Call*, 103 Ark. 201, 146 S. W. 125, 48 L.R.A. (n.s.) 418 (1912).

Thus the question is, was Exhibit 11 put in evidence at the trial? We have suffered much anxiety in the study of this question, but we cannot conscientiously say that the exhibit was actually introduced. We may explain our conclusion by referring to pertinent parts of the record.

During the examination of the plaintiffs' first two witnesses five exhibits were received in evidence. In each instance the court made a ruling. This excerpt is typical:

Mr. Stubblefield: Could I have the one that shows both marked as Plaintiffs' Exhibit No. 2 and the second one as Exhibit No. 3?

The Court: Let them be introduced.

(Thereupon, said pictures were marked for identification and received in evidence.)

A few minutes later, after the plaintiffs' fourth witness left the stand, the record reflects the following:

Mr. Stubblefield: Your Honor, Mr. Bonner and I mentioned before the trial that each of us had some exhibits we would like to have marked for identification, and I believe we said we would let them be

marked for identification without conceding their relevancy or competency. The reason we are doing it at this time, the witnesses who testified wanted to get away, and he was kind enough to consent we could do that.

Counsel for the plaintiffs then produced and described five pieces of documentary evidence, which were marked for identification as Exhibits 6 through 10. Counsel for the defense then, in the same manner, produced and described eight exhibits—the zoning ordinance and seven pictures—which were marked for identification as Exhibits 11 through 18.

Thereafter the reporter's transcribed record of the trial contains no additional reference to Exhibits 6 through 11. When defense counsel, in questioning his own client, sought to use the picture marked as Exhibit 12 this occurred:

Mr. Bonner: I hand you here Exhibit No. 12 and ask you to identify that.

A. This is a front view of my building taken from the west side of Kavanaugh Boulevard . . .

Mr. Bonner: Do you want me to place each of these in evidence again? We have had them marked for identification purposes.

Mr. Stubblefield: No, sir.

Mr. Bonner: These will be considered in evidence. That is Exhibit No. 12.

Continuing his direct examination, Bonner successively showed all seven pictures to Alexander, who explained what each one portrayed.

All exhibits except No. 11 are contained in the bound record, which is certified by the reporter and the

chancery clerk. Exhibit 11, which is bulky, was sent up in a separate envelope bearing a certificate by the reporter that it "was introduced during the course of the trial in the above styled cause of action."

Taking the record as a whole, we must conclude that Exhibit 11 was not put in evidence. With respect to the first five exhibits the chancellor made a ruling in every instance: "Let it [them] be introduced." By contrast, Exhibits 6 through 18 were presented in quick succession and marked for identification only, "without," in the words of counsel, "conceding their relevancy or competency." Clearly it was contemplated, as is usually the case with reference to exhibits marked for identification, that a definitive ruling would be made as each exhibit was actually offered in evidence. Exhibit 11 was never so offered. The omission is understandable, for the exhibit was produced in the first instance by defense counsel. There was no reason for him to put the zoning ordinance in evidence, because it was essential only to his adversaries' case—not to that of his own client.

We should point out that Exhibits 12 through 18 stand in a different position. Those pictures were shown to the witness Alexander and commented on by him. In such circumstances a formal ruling by the court was not necessary. *J. W. York & Sons* v *Powell*, 125 Ark. 597 (mem.), 187 S. W. 628 (1916); *School Dist. No.* 68 v. *Allen*, 83 Ark. 491, 104 S. W. 172 (1907). But there was no similar actual use of Exhibit 11 in the examination of any witness. Nor does the reporter's certificate on the envelope containing the ordinance, stating that the exhibit was "introduced," cure the defect. That certificate does not purport to be a transcription of the reporter's notes. The reporter's personal belief that the exhibit was introduced cannot take the place of a ruling by the court.

Counsel for the appellants did not file a reply brief; so we do not know what his answer to the appellee's argument might be. We have not overlooked, however, the possible contention that (*a*) Exhibit 11 was pro-

duced by the appellee, (*b*) he thereby avouched its accuracy, (*c*) the appellants make no objection to the exhibit, and (*d*) therefore it should be considered by this court.

We recognize the force of that reasoning and do not imply that it is unsound. The trouble is that the appellants, in presenting their argument on the issue of illegality, also rely upon Exhibits 6, 7, 8, and 9 in their effort to show that the appellee's pick-up station constitutes a nonconforming use with respect to which structural alterations are prohibited. Exhibits 6 through 9 were, like Exhibit 11, not put in evidence. But, unlike 11, Exhibits 6 through 9 were produced by the appellants and therefore were not avouched by the appellee. Hence even a holding that Exhibit 11 is properly before us would not dispel the uncertainty that confronts us with respect to the true zoning classification of the property in issue.

II. *Arbitrariness*. This and the third point do not call for an extended discussion. The plaintiffs attempted to prove that the proposed addition to the pickup station would create a traffic hazard at the intersection and would prevent passing motorists on Kavanaugh from seeing the plaintiffs' places of business, with a consequent loss of patronage. The plaintiffs' testimony about the traffic hazard, given by lay witnesses, was more than offset by the testimony of the only expert witness who testified, DeNoble, who appeared for the defense. We can attach no weight to the fact that the enlargement of Alexander's building may obstruct the public's view of the appellants' shops, for, in the absence of proof that the addition is illegal, there is no basis for saying that Alexander is not entitled to use his property in the way that is proposed.

III. *Limitations*. It is argued by the appellants that a petition similar to this one was denied in 1959,

that Alexander took an appeal from that denial, that he took a nonsuit in the circuit court, and that he failed to refile his suit within a year. A sufficient answer to this contention is that a zoning board may entertain successive applications for the same relief, especially when there is a showing of changed conditions. McQuillin, Municipal Corporations, § 25.275 (1965). It appears that Alexander's present application is for permission to construct an addition materially smaller than the one involved in the prior proceeding. That difference may well have been the change in conditions which induced the Board to change its mind.

Affirmed.

HARRIS, C. J., and BYRD, J., dissent and would grant rehearing.