Pearl Earl ASHER and Harvey BRADFORD *v.* CITY OF LITTLE ROCK

5-5459                                    449 S. W. 2d 933

Opinion delivered February 16, 1970

*Martin, Dodds, Kidd, Hendricks & Ryan,* for appellants.

*Kemp & Whitmore,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellants Asher and Bradford bring this appeal from their conviction of violation of Section 21-13 of the Little Rock City Code, on trial de novo in the circuit court on their appeal from the Municipal Court of Little Rock. This section, introduced in evidence, declares that the operation of a business upon which a privilege tax has been levied without a license showing payment of the tax is a misdemeanor punishable by a fine not more than double the amount of tax due. They assert two points for reversal, viz: (1) their convictions were not sustained by sufficient evidence and (2) evidence obtained as the result of observations made by police officers inside the house in which the business activities were allegedly carried on was inadmissible as a result of an illegal search or seizure.

At least one of the bases for the city's position on this appeal is its contention that the activities being conducted in this house constituted a business upon which a privilege tax had been levied. We are confronted with an insurmountable barrier in approaching both points because no ordinance of the city requiring the payment of a privilege tax was introduced in evidence. The courts cannot take judicial notice of city ordinances. *Strickland v. City of Little Rock,* 68 Ark. 483, 60 S. W. 26; *Gardner v. State,* 80 Ark. 264, 97 S. W. 48; *Drifoos v. City of Jonesboro,* 107 Ark. 99, 154 S. W. 196; *Walthour v. Alexander,* 243 Ark. 621, 421 S. W. 2d 613. The *Strickland* case is particularly significant precedent. There the appellant had been convicted of violation of an ordinance which made interference with a member of the police department in performance of his duty a misdemeanor. Evidence showed that appellant had prevented a sanitary policeman from entering his shop. The conviction was reversed for insufficiency of the evidence to show that appellant interfered with the policeman in the discharge of his duties, because of the failure of the city to prove the powers and duties of the sanitary policeman. We are unable to say from the record here that appellants were liable for a privilege tax, regardless of whether they were conducting a business on the premises, what-

ever their business may have been. For the same reason, we cannot say whether a misdemeanor was being committed by appellants in the presence of the officers or that the search and seizure was incident to a lawful arrest for a misdemeanor committed in the presence of the arresting officers. If, indeed, the activities conducted by appellants constituted a business for which the payment of a privilege tax was required, appellants were committing a misdemeanor in the presence of the officers on the basis of the testimony of the police officer hereinafter set out, as will presently be shown.

The city seeks to justify the warrantless search of the premises not only upon the assertion that it was made incident to a valid arrest for the alleged misdemeanor, but also as the search of a public place. Since the case must be remanded for a new trial, it is necessary that we evaluate these contentions. At the outset, we point out that where the validity of a warrantless search is questioned on the basis of compliance with constitutional standards the burden is on the party seeking exemption from the requirement of a search warrant. *Chimel* v. *California,* 395 U. S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969); *United States* v. *Jeffers,* 342 U. S. 48, 72 S. Ct. 93, 96 L. Ed. 59 (1951); *McDonald* v. *United States,* 335 U. S. 451, 69 S. Ct. 191, 93 L. Ed. 153 (1948).

The offense was alleged to have been committed on March 22, 1969. As a result of complaints to the Little Rock Police Department concerning noisy disturbances at 1801 Gaines Street, the house there was placed under the surveillance of officer W. A. Gibson and three others on the date mentioned. Gibson's version of ensuing developments follows:

He observed from a police car parked one block north of the above address. He heard loud music and noises and heard people talking loudly. He saw 10 or 15 people come to the front entrance of the house, who were met by someone and admitted after a pause for conversation. He saw these people clear-

ly and could see that they were carrying packages and whiskey. Activities inside the house could not be observed because blankets covered the windows. During the surveillance, the officers had indications that their radio communications were being monitored. After making these observations, the officers went upon the premises they had been observing, where they were met by Earl Asher. Even though Asher asked if the officers had a warrant and made it clear to the officers that he preferred they not enter the house without a warrant, Gibson stated that he opened the door and went in without the use of force, having been admitted by Bradford. Bradford said that the house belonged to appellants and admitted that they were accepting money at the door for admission to the place, even though he contended that appellants were having a private party for which he thought no license was required. Inside the premises Gibson observed what he called a disturbance. He described the music and conversation as loud, characterizing it as what one normally would hear around "beer joints" or "clubs." He found a commercial "jukebox" and 28 people. There were tables upon which drinks and beer were placed. He observed a lot of whiskey that had been "opened."

Bradford admitted that he and Asher owned the house. His version follows:

He came to the door and found that Asher was refusing the police admittance. They had Asher backed up against the wall searching him for a key. He opened the door to the police in order to avoid injury to Asher, after having heard them tell Asher that they were going to use him for a battering ram to open the door. All of those present were his personal friends and acquaintances who had been invited by him or Asher and who were admitted, without any charge, upon their knocking on the front door or ringing the doorbell. He did not make any statement to the officers about charging admission. He did tell them that 12 or 15 of the people

present had contributed to a "pot" for the purpose of having parties, which were attended by 25 to 30 invited guests, some of whom come from out-of-town on invitation for an entire weekend.

Asher testified that he was outside the house to check on information conveyed by a friend that a strange man was sitting in a car in front of the friend's sister's house. According to him, the officers claimed they had been invited to the party, but upon his denial of admission, one of them took his car keys from his pocket and tried to unlock the door. It was then, said Asher that the officers said they were going to use him for a battering ram, after which Bradford opened the door.

If the officers' version of what happened is accepted, it would constitute substantial evidence that the entry into the premises and the search thereafter were not unreasonable. Assuming that upon retrial, a valid ordinance levying a privilege tax upon the activities which were being conducted by appellants on the date in question is introduced, it seems that there is substantial evidence that a misdemeanor was being committed in the presence of the officers. It is, of course, incumbent upon the city to show that a violation of a city ordinance was being committed in the presence of the officers. Arkansas Statutes Annotated § 43-403 (Repl. 1964) authorizes an arrest by a peace officer where a public offense is committed in his presence. We know of no definition of the terms of this statute in our cases. It is well established in other jurisdictions, however, that a crime is committed in the presence of an officer, whenever he is apprised by any or all of his senses that it is being committed. *Giannini* v. *Garland*, 296 Ky. 361, 177 S. W. 2d 133 (1944); *State* v. *District Court*, 72 Mont. 77, 231 P. 1107 (1924); *State* v. *Blackwelder*, 182 N. C. 899, 109 S. E. 644 (1921); *McCanless* v. *Evans*, 177 Tenn. 86, 146 S. W. 2d 354 (1941). It is only necessary that the one making the arrest have reasonable grounds for believing, in good faith, that the person arrested is

guilty of the offense.[1] *State* v. Blackwelder, supra; *Giannini* v. *Garland,* supra. Where the circumstances are such that an officer would be justified in making a complaint upon which a warrant would be issued, the officer may arrest without a warrant if the offense which the circumstances tend to establish was committed in his presence. *State* v. *District Court,* supra. If the officer, by his presence, becomes informed through any of his senses of material elements of the particular crime which would have a tendency to produce in the minds of a reasonably prudent person that it is morally certain that the principal fact occurred, the offense may be considered as having been committed in his presence, although he did not discover all of the elements necessary to the completion of the offense without admission of the other necessary elements by the arrested person to the officer. *Giannini* v. *Garland,* supra. See also Annot., 76 A. L. R. 2d 1432, 1441 (1961).

If, as a matter of fact, Gibson and the officers accompanying him heard loud music, noises and loud talking emanating from the building, observed persons entering carrying whiskey and had reasonable grounds to believe that a charge for admission to the premises were being collected, there would be substantial evidence from which it might be found that a public offense was being committed in his presence, if, as a matter of fact, the activities being conducted were subject to a privilege tax which had not been paid.

The city also seeks to justify the search upon the basis that appellants were actually operating a public place which the officers had a right to enter without a search warrant. In view of the uncontradicted testimony by appellants that no one was present who had not been specifically invited to the premises and the absence of any evidence to the contrary, it does not appear that the search of the premises made by the officers can be justi-

---

[1]Hearsay would not be a proper basis for an arrest for commission of a misdemeanor in the presence of an officer, even though it might be sufficient basis for a reasonable belief that one had committed a felony.

fied as having been conducted after their entry into a public place. The rule governing such a search and seizure is treated in *Gerard* v. *State,* 237 Ark. 287. 372 S. W. 2d 635. Before a finding that this rule is applicable could be justified, it would be necessary that there be some evidence from which it could be said that the general public, or a substantial part thereof, were admitted or expressly or impliedly invited. Charging admission to a closely restricted group would not necessarily convert the premises into a public place, even though it may be a place of business.

The remaining basis upon which the city seeks to justify the search is that it was made with the consent of one of the owners or occupants of the premises. It is well to remember that the burden of proving the existence and voluntariness of consent to a warrantless search is upon the party seeking to establish its legal sufficiency. *Maxwell* v. *Stephens,* 348 F. 2d 325 (8th Cir. 1965), cert. den. 382 U. S. 944, 86 S. Ct. 387, 15 L. Ed. 2d 353 (1965); *United States* v. *Page,* 302 F. 2d 81 (9th Cir. 1962). There can be no doubt that an occupant who has a proprietary interest in a building can consent to entry by police officers and a search of the premises and seizure of whatever may be found there as evidentiary material. *Maxwell* v. *Stephens,* supra. One having joint possession or equal authority with another over the premises may authorize a warrantless search thereof. *Drummond* v. *United States,* 350 F. 2d 983 (8th Cir. (1965), cert. den. 384 U. S. 944, 86 S. Ct. 1968, 16 L. Ed. 2d 1031 (1966). We have held that the search of an apartment occupied by a husband and wife without a warrant, after the officers were invited in by the wife, was not a violation of constitutional protection against unreasonable search as to either the husband or the wife. *Dokes* v. *State,* 241 Ark. 720, 409 S. W. 2d 827, cert. den. 389 U. S. 901, 88 S. Ct. 212, 19 L. Ed. 2d 218 (1967).

Reversed and remanded for further proceedings con-

sistent with this opinion.