**In re MORRILTON PLASTICS PRODUCTS, INC.**

Bankruptcy No. 91–41950 S.

United States Bankruptcy Court,
E.D. Arkansas,
Western Division.

Jan. 27, 1995.

Peter R. Emanuel, pro se.

James Dowden, Little Rock, AR, for Nat. Bank of Detroit.

Richard Cox, Trustee.

### ORDER

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon three motions filed by Peter R. Emanuel:

(1) First Motion to Compel Partial Distribution by the Trustee to Emanuel, filed on October 4, 1993;

(2) Addition to Emanuel's First Motion to Compel Trustee to Distribute, filed on November 21, 1994; and

(3) Motion to Order Dismissal of Trustee, filed on November 21, 1994.

I. *History of the Proceedings*

The debtor, an automobile parts manufacturer, filed for relief under Chapter 11 of the Bankruptcy Code on August 12, 1991. Peter R. Emanuel is listed as a creditor on the Voluntary Petition, docket No. 1. and appears on the mailing matrix submitted by the debtor with the Petition. The case was converted to a case under Chapter 7 on March 17, 1992. On March 18, 1992, Richard Cox

was appointed as Chapter 7 trustee. During the pendency of the Chapter 7 case, the trustee investigated the records of the debtor, sold numerous items of equipment, distributed proceeds from the sales, collected accounts receivables, and performed all duties required of him. The proceeds from the sale of equipment were incrementally paid to National Bank of Detroit ("NBD"), the debtor's primary secured lender, pursuant to Court Orders dated June 4, 1992 (trustee's exhibit 6), August 4, 1992 (trustee's exhibit 7), and October 9, 1992 (trustee's exhibit 8). No objections were filed to the motions engendering these Orders, and no appeals were filed.

On October 4, 1993, Peter R. Emanuel filed his First Motion to Compel Partial Distribution by the Trustee to Emanuel. By this motion, Emanuel claims that he is the owner of certain of the equipment sold by the trustee such that a distribution should be made to him for the value of the equipment. Emanuel demands that the trustee be ordered to distribute $50,000 to Emanuel in payment of his claim.[1] Emanuel claims that equipment sold by the trustee is his property pursuant to a 1988 lease. Both the trustee and NBD responded to the motion, asserting that the property had been sold to Morrilton Plastics, pursuant to an amendment to the lease, and that, in any event, Emanuel had subordinated any right to payment or any lien interest to that of NBD.

Emanuel filed an "Addition to Emanuel's First Motion to Compel Trustee to Distribute" on November 21, 1994, by which he asserts that the Court is "now aware" that the equipment is owned by Emanuel and is not subject to a lien or other interest by any other person. The addition did not make further allegations of fact or law regarding the first motion, but again, demanded a distribution to Emanuel.[2]

The third matter before the Court is Emanuel's Motion to Order Dismissal of Trustee. Emanuel asserts that the trustee has not carried out his duties, including a duty to advise Emanuel of the bankruptcy. Essentially, Emanuel claims that the trustee should be removed because he "confiscated" Emanuel's property and has not ensured that Emanuel will receive a distribution.

During the pendency of these proceedings Emanuel has written multiple letters to the Court, the Courtroom Deputy Clerk, and the Law Clerk, demanding legal advice, complaining that the Court was not protecting his rights as a citizen, and demanding restitution. Initially, the Law Clerk responded to the letters, advising Emanuel that the Court could not give legal advice and suggesting that Emanuel seek the advice of an attorney.

Emanuel's First Motion to Compel Distribution was initially scheduled for hearing on November 30, 1993. Emanuel again wrote a letter, this time requesting that the hearing be rescheduled inasmuch as his wife would be undergoing surgery near the scheduled hearing date. Although the letter was not a proper motion seeking to continue the hearing, The Court directed the clerk to place the letter in the court file and issued a brief Order indicating that conduct of Emanuel indicated that advice of counsel would be of benefit and that Emanuel would be given an opportunity to retain counsel prior to any hearing on the matter. Accordingly, the Order, entered on November 29, 1993, was an Order continuing the hearing. No other express directives were issued in that Order.[3]

---

1. Emanuel's motion is virtually identical to a similar motion filed earlier by NBD. NBD withdrew its motion to compel distribution on September 22, 1993, in response to the trustee's assertion that no distribution should take place until the tax liability of the estate was determined.

2. The Addition also demanded that the distribution be made without requirement of Emanuel attending a hearing because, he asserted, his appearance would result in "retaliatory action." This request was denied by Order entered November 22, 1994, in which the Court attempted to explain the necessity for appearing and prosecuting one's case. *See infra* n. 9.

3. The Court is well aware that there exists a statutory right for an individual to proceed *pro se* in civil litigation. 28 U.S.C. § 1654. However, from the content of the letters written by Emanuel, it was clear that his understanding of his rights and the conduct of trial was sufficiently poor to place prosecution of his case in jeopardy. Accordingly, the Court deemed it the better course to advise Emanuel to obtain counsel and to give him an opportunity to do so.

Hearing on Emanuel's Motion to Compel Distribution was rescheduled for January 11, 1994.

On December 13, 1993, more than ten days after entry of the Order, Emanuel filed a Notice of Appeal of the Order entered on November 29, 1993, which had given him the continuance he sought. Emanuel never sought an extension of the time to appeal pursuant to Rule 8002(c), Federal Rules of Bankruptcy Procedure.[4]

On January 11, 1994, the Court called Emanuel's motion for hearing. Inasmuch as there were no appearances by Emanuel or any person on his behalf, the Court denied the motion for lack of prosecution. *See* Fed. R.Bankr.Proc. 7041(b);[5] *Darms v. McCulloch Oil Corp.*, 720 F.2d 490 (8th Cir.1983). The Order was entered on January 18, 1994. On February 7, 1994, more than ten days after the entry of the Order, Emanuel filed an appeal of the Order of January 18, 1994. *See* Fed.R.Bankr.Proc. 8002(a). An amended notice of appeal was filed on February 17, 1994.

Emanuel took no steps to perfect his appeal pursuant to Rule 8006, but relied upon the statements and attachments appended to his notice of appeal as the record on appeal. Due to the lack of submissions, the clerk prepared a form Order transmitting the case to the district court for "consideration on the issue of whether the appeal should be dismissed because of the appellant's failure to prosecute."

On October 31, 1994, the district court issued an order in which it indicated that there was insufficient information in the record to determine whether the bankruptcy court had abused its discretion. Accordingly, since the district court could not make a determination on the issue it believed to be on appeal (whether the bankruptcy court abused its discretion by continuing the hearing in order to provide an opportunity for the creditor to seek counsel) the district court remanded the case for the bankruptcy court to hear the underlying matter, the Motion to Compel Distribution.[6]

---

4. Since no request for an extension was filed, and the appeal was untimely, no court had subject matter jurisdiction over the appeal. *See Jacobson v. Nielsen*, 932 F.2d 1272 (8th Cir. 1991); *Pilliod of Carolina, Inc. v. Ray (In re Arkansas Wholesale Furniture, Inc.)*, 19 B.R. 1013 (E.D.Ark.1992) (Roy, J.); *In re Moody*, 41 F.3d 1024 (5th Cir.1995); *In re Aguilar*, 861 F.2d 873 (5th Cir.1988); *In re Abdallah*, 778 F.2d 75 (1st Cir.1985), *cert. denied*, 476 U.S. 1116, 106 S.Ct. 1973, 90 L.Ed.2d 657 (1985); *In re Universal Minerals, Inc.*, 755 F.2d 309 (3d Cir.1985); *Martin v. Bay State Milling Co.*, 151 B.R. 154 (N.D.Ill.1993); *Wittman v. Toll (In re Cordry)*, 149 B.R. 970 (D.Kan.1993).

5. Rule 7041, Federal Rules of Bankruptcy Procedure, is applicable to contested matters pursuant to Rule 9013.

6. *But see Pillerin Laundry Machinery Sales Co. v. Reed*, 300 F.2d 305, 315 (8th Cir.1962); *Zander v. Lutheran Brotherhood of Minneapolis*, 137 F.2d 17, 21 (8th Cir.1943) ("[T]he burden rests upon the appellant to bring before us a complete and adequate statement of all the evidence on which the trial judge made his findings.... Nothing less entitled appellant to have a review here of the question of whether the trial judge's findings of fact were clearly erroneous."); *Sublette v. Servel, Inc.*, 124 F.2d 516, 517 (8th Cir.1942) ("It is, of course, obvious that the question presented

for review cannot be considered or determined by this Court upon the defective record furnished by the appellants. The findings of the trial court are presumptively correct. In the absence of a proper record, shown to contain all of the evidence essential to enable this Court to determine the correctness or incorrectness of the challenged findings, such findings cannot be questioned on review."); *Oriole Phonograph Co. v. Kansas City Fabric Products Co.*, 34 F.2d 400, 401 (8th Cir.1929).

*But see Garland v. Peebles*, 1 F.3d 683 (8th Cir.1993) (standards for determining whether dismissal for failure to prosecute was an abuse of discretion); *Dubose v. Minnesota*, 893 F.2d 169, 171 (8th Cir.1990) (pro se plaintiff's claims properly dismissed for failure to appear at trial and prosecute case); *Dorms v. McCulloch Oil Corp.*, 720 F.2d 490 (8th Cir.1983) (dismissal for lack of prosecution not an abuse of discretion where plaintiff refused to put on any evidence); *Garrison v. Int'l Paper Co.*, 714 F.2d 757 (8th Cir. 1983); *Merchants & Farmers Bank of Dumas v. Hill*, 122 B.R. 539, 549 (E.D.Ark.1990) (Wright, J.) ("Whatever injury the Hills may suffer from failing to try the counterclaim is self-inflicted. There was no legal obstacle to litigating the counterclaim as scheduled. When they refused to go forward, they did so at their own peril."); *see also Long v. Comm'r*, 742 F.2d 1141 (8th Cir.1984) (per curiam).

Pursuant to the directive of the district court,[7] the Court scheduled Emanuel's motion for hearing. The first notice setting the Motion to Compel Distribution for January 24, 1995, at 1:00 p.m. in Little Rock, Arkansas, was entered on November 10, 1994, and was posted certified mail, return receipt requested. P.R. Emanuel signed the return receipt. A second notice was also sent, entered on November 23, 1994, which indicated that all three of Emanuel's motions would be heard on January 24, 1995. Emanuel appealed this Order setting the hearings by a notice filed on December 28, 1994.[8] By a document directed to the Court, it was unclear whether Emanuel understood that the hearing scheduled for January 24, 1995, would be held, despite the filing of a notice of appeal. Specifically, the "Addition to Emanuel's First Motion to Compel Trustee to Distribute" on November 21, 1994, asserted that the Court is "now aware" that the equipment is owned by Emanuel and is not subject to a lien or other interest by any other person. The language employed in the Addition appeared to indicate that Emanuel believed the merits of the action to have been decided or otherwise concluded. In addition, the Amendment also requested that Emanuel not be required to appear at the hearing. Accordingly, the Court issued an Order on January 4, 1995, specifically advising all parties, including Emanuel, that

> All of the issues raised in (1) Emanuel's Motion to Compel Distribution, filed on October 4, 1993; the (2) Addition to Emanuel's First Motion to Compel Trustee to Distribute, filed on November 21, 1994; and the (3) Motion to Order Dismissal of Trustee, filed on November 21, 1994, will be tried to the Court on January 24, 1995, at 1:00 p.m. as previously Ordered.
>
> All parties must be prepared to prosecute their respective cases. Failure to appear and prosecute their respective cases will be grounds for dismissal of their cause.

Further, in the Order of November 22, 1994, the Court emphasized the necessity that a party appear to prosecute his case:

> Emanuel, like any other litigant, may not be granted relief without hearing on the contested matters. He must present evidence in support of his pleadings. He may do so by representing himself by appearing in this Court, or he may do so through counsel. In either event, his case must be prosecuted. Accordingly, any request for him to be excused from prosecuting his case, whether *pro se* or represented by counsel, must be denied.

On January 24, 1995, the Court called the matters for hearing. Counsel for NBD, James F. Dowden, appeared with his witness who had travelled from Ann Arbor, Michigan to testify. The Trustee, Richard Cox, personally appeared and with his attorney, Richard Henry. Counsel for the debtor, as well as an attorney representing the U.S. Trustee appeared for the hearing. For the second time, Emanuel did not appear.[9] No formal

7. *But see Jacobson v. Nielsen,* 932 F.2d 1272 (8th Cir.1991) (no jurisdiction over case in which untimely appeal filed).

8. This would not appear to be a final appealable order. In addition, Emanuel again failed to file a timely notice of appeal pursuant to Rule 8002, Federal Rules of Bankruptcy Procedure. Emanuel also failed to comply with any of the requirements of Rule 8006. Accordingly, inasmuch as the appeal was untimely, Fed.R.Bankr.Proc. 8002(a), and no request for extension of time was filed, Fed.R.Bankr.Proc. 8002(c), the Court, by Order entered January 5, 1995, directed the clerk to transmit the appeal to the district court in order that it could be dismissed for lack of subject matter jurisdiction. *See Jacobson v. Neilsen,* 932 F.2d 1272 (8th Cir.1991).

9. By letters directed only to the Clerk of the Court, Emanuel stated that he would not appear in Court due to his fear that the Court would order him incarcerated. This fear is apparently based upon his belief that the Court has required him to seek counsel, or that the Court is prejudiced against him because he is *pro se.* The hysteria, expressed in his numerous letters, including those to the Court, the Clerk, the Administrative Office, the Director of the Executive Office of the United States Trustee, and Senator Connie Mack, is inexplicable in light of the fact that the Court has never Ordered him to obtain counsel. Indeed, in the Order entered November 22, 1994, the Court expressly advised Emanuel that he had the right to represent himself:

> If is a fundamental precept that citizens are entitled to due process of law, whether those persons appear *pro se* or are represented by counsel. As a matter of statute, in civil matters, litigants have a right to proceed pro se. 28 U.S.C. § 1654.... Emanuel ... must present evidence in support of his pleadings. He may do so by representing himself by appear-

or informal requests for a continuance were filed by any party. No requests for stay were filed. Three notices of the hearing, including one delivered by certified mail, were served upon Emanuel. In this circuit, this would generally be considered grounds for dismissal for failure to prosecute pursuant to Rule 41(b). *Dubose v. Minnesota*, 893 F.2d 169, 171 (8th Cir.1990) (pro se plaintiff's claims properly dismissed for failure to appear at trial and prosecute case).

However, since the district court directed that a hearing be held, the parties appearing at the thrice noticed hearing presented their evidence. Indeed, the Court required evidence on the Motion to Compel Distribution inasmuch as the district court had directed a hearing be held, despite Emanuel's previous failure to appear to prosecute his Motion to Compel Distribution.[10] In addition, the Trustee placed evidence in the record defending against Emanuel's Motion to Order Dismissal of Trustee. Since he did not appear, individually or by a representative, Emanuel submitted no evidence to the Court.[11]

II. *The Motion to Compel Distribution*

■ Emanuel asserts that the property sold by the trustee in 1992 is not property of the estate, but, rather, property owned by him such that Emanuel is entitled to a distribution in the value of that equipment.

On August 1, 1988, the debtor and Peter Emanuel entered into a lease agreement (Trustee's Exhibit 1) in which the debtor rented certain equipment from Emanuel. Both Emanuel and the principal of the debtor signed this document. One year later, numerous documents were signed altering the relationship between the parties. On August 1, 1989, the agreement was amended to provide that full legal and equitable title to the leased property would vest in the lessee, the debtor, upon termination of the lease and payment of $1. Both Emanuel and the principal of the debtor signed this document (Trustee's Exhibit 2).[12] Pursuant to the terms of this document, the trustee correctly determined that, under Arkansas law, the "Amendment" dated August 1, 1989, was a contract for the sale of the property, rather than a true lease. *Hill v. Bentco Leasing, Inc.*, 288 Ark. 623, 708 S.W.2d 608 (Ark. 1986): *Bell v. Ilek Leasing Corp.*, 262 Ark. 22, 555 S.W.2d 1 (1977). However, since this contract was never recorded with the County Clerk (Trustee's Exhibit 4) or the Secretary of State (Trustee's Exhibit 3), Ark.Code § 4–9–401; *In re Scott*, 113 B.R. 516 (Bankr. W.D.Ark.1990), Emanuel was unsecured as to third parties, and, is an unsecured creditor in this case.

■ During the same period of time in which the lease was amended to create a sale contract, the debtor obtained financing through NBD, using the equipment which was the subject of the agreements between debtor and Emanuel as collateral. NBD Exhibit 1. Emanuel consented to the imposition of NBD's lien in a Security Agreement

ing in this Court, or he may do so through counsel.

10. *But see supra,* n. 6.

11. Of course, the letters, documents, attachments, and assertions filed with the clerk do not constitute evidence. They are merely allegations which are required to be proved at an evidentiary hearing. *See Pillerin Laundry Machinery Sales Co. v. Reed*, 300 F.2d 305, 315 (8th Cir.1962) ("Appellants here refer only to an exhibit attached to their reply brief. This exhibit was not part of the evidence and may not be considered by this court."); *Razorback Cab of Fort Smith, Inc. v. Lingo*, 304 Ark. 323, 802 S.W.2d 444 (1991); *Walthour v. Alexander*, 243 Ark. 621, 623, 421 S.W.2d 613, 614 (Ark.1967) ("Nor can we consider a document that was not received in evidence even though it may have been in the courtroom as, for example, an exhibit to a pleading."); *National Annuity Association v. McCall*, 103 Ark. 201, 146 S.W. 125 (Ark.1912) ("The exhibit to the answer of the alleged application was no proof thereof. The application, after proof of its execution, should have been introduced in evidence upon the trial of the case....").

12. Emanuel alleges that this second agreement was never "consummated" because it was not signed or witnessed by the debtor. *See* Emanuel's Reply to Trustee's Response to First Motion to Compel Distribution by the Trustee to Emanuel, filed Nov. 1, 1993. Since the document contains a signature of the principal of the debtor, this allegation is untrue. Further, the court is unaware of any modern authority which requires that a contract be witnessed in order for it to be valid.

he signed on August 2, 1989. Exhibit 2 to NBD Exhibit 1.

In addition, on or about August 4, 1989, Emanuel signed a document entitled Subordination Agreement (Trustee's Exhibit 5) in which he subordinated all right to payment, all liens and security interests to the liens and interests of NBD. The subordination agreement further provided that

> Upon any distribution of any of Borrower's assets, whether by reason of sale, reorganization, liquidation ... bankruptcy ... Lender shall be entitled to receive payment in full of the Obligations prior to the payment of all or any part of the Indebtedness....

The Subordination Agreement also placed restrictions upon Emanuel's right to further subordinate his interest, and required him to make certain notations on legal documents. Thus, Emanuel subordinated his interest to that of NBD.[13]

Financing statements (NBD Exhibit 2) were duly recorded in Florida (Emanuel's residence) and Arkansas (debtor's residence). The certificates in evidence (Trustee's Exhibits 3, 4) from the Secretary of State and the Circuit and Chancery Clerk of Conway County reflect that NBD's liens are still of record. Thus, Emanuel subordinated his interest to that of NBD such that NBD's interest in the collateral is prior in right to that of Emanuel.[14] Accordingly, NBD is entitled to distribution of the proceeds of the sale of the collateral

On September 6, 1991, the Court entered a cash collateral Order (NBD Exhibit 5) which provided that NBD would be granted a super priority in the Chapter 11 proceedings, secured by a first lien on all the debtor's accounts receivable and inventory.[15] Thus, to the extent funds are covered by the cash collateral Order, NBD, again, has priority over Emanuel.

### III. *The Motion to Order Dismissal of Trustee*

■ Emanuel asserts that the trustee has not carried out his duties, including a duty to advise Emanuel of the bankruptcy.[16] Essentially, Emanuel claims that the trustee should be removed because he "confiscated" Emanuel's property and has not ensured that Emanuel will receive a distribution. The trustee testified regarding each of the assertions raised by Emanuel in his Motion. From his testimony, it is clear that the trustee, in fact, investigated the assets of the estate, including interests in the collateral which is the subject of Emanuel's Motion to Compel Distribution, as well as investigating the value of a lawsuit pending in the U.S. District Court for the Northern District of Illinois. The trustee properly performed his duties, including filing appropriate motions and conducting sales, in compliance with the requirements of the Bankruptcy Code.

### IV. *Conclusion*

This Court has twice given to Emanuel the opportunity to present his case. In both instances he has failed to present any evidence to the Court. Despite the fact that the hearing held on January 24, 1995, was thrice noticed to Emanuel, he did not appear. The uncontroverted evidence before the Court is that Emanuel is, at most, an unsecured creditor. Indeed, inasmuch as Emanuel has not filed a proof of claim in this case, has never submitted any documents, much less evi-

---

13. On the same date, Louis James, president of the debtor and Emanuel signed personal Guarantees (NBD Exhibit 3) under which they guaranteed payment of the Morrilton Plastic Products' debt to NBD. This document is signed, witnessed and notarized. Thus, it may be that James and Emanuel owe NBD money should a deficiency remain owing to NBD after liquidation of all collateral.

14. There is no evidence, nor indeed an assertion in the pleadings, that the parties ever agreed to the release of the interest as against the property. While Emanuel asserts, in his reply, that there was a release of liability, his bare assertion relates only to his personal liability.

15. Docket Nos. 4 and 26 reflect that Emanuel was served with the motions for authority to use cash collateral.

16. There is no such duty on the part of the trustee. The clerk sends notices of the bankruptcy to all creditors. It would appear by Emanuel's motion that he has made the Administrative Office of the Court a witness in this matter: he submits their statements as to the factual conduct of the case as support for his motion.

dence, that indicates there is in fact a debt now owing to him by the debtor, there is no evidence that Emanuel would be entitled to any distribution in the bankruptcy case.[17]

The uncontroverted evidence is that Emanuel first entered into a lease which by amendment became a contract to sell equipment to the debtor. The debtor, with the consent of Emanuel, used that equipment as collateral to obtain financing from NBD. Indeed, Emanuel guaranteed the debt. NBD filed its financing statements as required by Arkansas and Florida law such that it perfected its security interest in the collateral. Upon sale of the collateral by the Chapter 7 bankruptcy trustee, NBD is entitled to first receive distribution of the proceeds. Since the debt to NBD exceeds not only the value of the collateral, but also the value of all of the assets of the estate, NBD is essentially the only creditor entitled to receive a distribution in this case. Emanuel is at most an unsecured creditor who, were there assets available for unsecured creditors and had he timely filed a proof of claim, would receive his pro rata share of any distribution to unsecured creditors. That is all Emanuel would be entitled to receive under the Bankruptcy Code.

Even were Emanuel the owner of the equipment at issue in this proceeding, the uncontroverted evidence is that Emanuel pledged that equipment. *See* NBD Exhibit 1 and attachments. Thus, in a liquidation context, upon the sale of that equipment, the lender is entitled to the proceeds. Inasmuch as Emanuel is not entitled to a distribution in this case, it is

**ORDERED** as follows:

(1) The First Motion to Compel Partial Distribution by the Trustee to Emanuel, filed on October 4, 1993, is DENIED.

(2) The Addition to Emanuel's First Motion to Compel Trustee to Distribute, filed on November 21, 1994, is DENIED.

(3) The Motion to Order Dismissal of Trustee, filed on November 21, 1994, is DENIED.

**IT IS SO ORDERED.**

to expire on August 1, 1990. The Bankruptcy case was filed August 12, 1991.

---

17. There are documents in evidence that refer to a debt to Emanuel that existed in 1989. The Lease and its Amendment were, by their terms,