Duck *v.* Arkansas Corporation Commission.

4-6694                                          158 S. W. 2d 24

Opinion delivered January 12, 1942.

*Coulter & Coulter,* for appellant.

*Jack Holt,* Attorney General, and *Eugene R. Warren,* for appellee.

McHANEY, J. Appellee brought this action against appellant and another to enjoin them from operating so-called travel bureaus without first having obtained a permit so to do and without otherwise complying with the provisions of act No. 367 of the Acts of 1941, commonly known as the "Motor Carrier Act." At the conclusion of the trial the court entered a decree as prayed against both defendants, but only appellant Duck has appealed.

The complaint alleged that appellant owns and operates a travel bureau in the city of Little Rock, at 116 Louisiana street, and advertises same under the name of A. A. Pulaski Travel Bureau; that the action is brought in the chancery court under the express authority of § 22(b) of said act; that under the provisions of subdivision 13 of § 4 of said act, operators of travel bureaus are termed "brokers," and in § 13 thereof it is provided that no person shall act as a "broker" as defined in subdivision 13 of § 4, "either by negotiation or solicitation, advertisement or otherwise, or make any contract, agreement or arrangement to provide, prescribe, furnish or arrange for transportation unless such person holds a broker's license issued by the plaintiff (appellee) herein"; that said act confers upon it power and authority to regulate the business of appellant and to make and establish rules and reasonable requirements with respect to the licensing and otherwise regulating the practices of appellant or any other such broker; and that appellant has neglected, failed and refused to procure a license or permit from it and to subject himself to proper regulation by it for the protection of the public.

To this complaint a demurrer was interposed and overruled, as also a motion to make more definite and certain. Thereupon an answer was filed denying the allegations of the complaint and alleging affirmatively that the act in question has no application to appellant for the reason (1) that he is not selling, or offering for sale, transportation subject to the provisions of said act, "or negotiating for or holding out, by solicitation, advertisement or otherwise as one who sells, provides, furnishes, contracts, or arranges for any transportation subject to the provisions of said act," and (2) that other provisions of the act exclude the business transacted by him, and (3) that he holds a lawful permit issued before the act in question became effective and is excluded by § 8(d) thereof. And further the act relied on is unconstitutional for several reasons.

It is conceded that appellant has not applied for nor received a permit from appellee to operate a travel bureau. It was shown that he advertises in the Little Rock telephone directory and the Little Rock daily newspapers. The telephone directory ad being: "A. A. Pulaski Travel Bureau. Travel, share expense plan. Cars to all points daily. Phone 2-1483, Little Rock, Arkansas, 116 Louisiana." An ad appearing in the Arkansas Democrat October 30, 1941, is: "2-1483. Travel, share expenses. Licensed, Bonded Cars daily. 116 Louisiana. A. A. Pulaski Travel Bureau." An identical ad appeared in the Arkansas Gazette of November 27, 1941. Other evidence was introduced to show that appellant was engaged in the business of arranging for or actually selling transportation for passengers in either casual or occasional carriers or by regular carriers of passengers posing as casual or occasional carriers.

It is first argued that the court erred in not sustaining the demurrer. We think not. The complaint sufficiently alleged that appellant was operating a business specifically covered by the act, and that he was doing so illegally in that he had failed and refused to make application for regulation and to secure a license or permit to operate. This was sufficient to apprise appellant of the issue he was to meet. For the same reason the

court correctly overruled the motion to make more specific. Other questions are suggested and argued, including the sufficiency of the evidence to support the decree, which we dispose of by saying we find them without merit sufficient for a reversal.

The only serious or important question in the case, as we view it, is the constitutionality of that portion of said act 267 applicable to the business of appellant. A "broker" is defined in subsection 13 of § 5(a) of said act as follows: "The term 'broker' means any person not included in the term 'motor carrier' and not a *bona fide* employee or agent of any such carrier, who or which, as principal or agent, sells or offers for sale any transportation subject to this act, or negotiates for, or holds himself or itself out by solicitation, advertisement, or otherwise as one who sells, provides, furnishes, contracts, or arranges for such transportation." It will be noticed by the above that the transportation handled by a broker must be "transportation subject to this act." By subsection 8 of § 5(a), it is provided: "The term 'contract carrier by motor vehicle' means any person, not a common carrier included under paragraph 7, § 5 (a), of this act, who or which, under individual contracts or agreements, and whether directly or indirectly or by a lease of equipment or franchise rights, or any other arrangement, transports passengers or property by motor vehicle for compensation." The exemption clause provides: "Nothing in this act shall be construed to include . . . the casual, occasional, or reciprocal transportation of passengers or property for compensation by any person not engaged in transportation by motor vehicle as a regular occupation or business, . . . except when such transportation is sold, or offered for sale, or provided, or procured, or furnished or arranged for, by any person who holds himself or itself out as one who sells, or offers for sale transportation wholly or partially subject to said act, or negotiates for, or holds himself or itself out by solicitation, advertisement, or otherwise, as one who sells, provides, furnishes, contracts, or arranges for such transportation."

It thus appears that the act does not apply to "the casual, occasional, or reciprocal transportation of passengers" by one not so engaged as a regular business, unless such transportation is arranged by a travel bureau, or a broker, as above defined. One of the contentions of appellant is that the act does not apply to him, and that, if it does, it is unconstitutional because it discriminates against him, in that, if the casual operator of a motor car arranges with the passenger for transportation, such contract is not prohibited, but that, if he brings the two together and they make the arrangement for transportation, it is prohibited. And so it is. Therefore, the act does apply to him and all others engaged in the operation of travel bureaus. Nor can we agree that the act is unconstitutional for the reason suggested, as it applies to all brokers, all persons engaged in the travel bureau business, and is, therefore, not discriminatory.

Section 13 of said act reads as follows: "(a) No person shall for compensation sell or offer for sale transportation subject to this act or shall make any contract, agreement, or arrangement to provide, procure, furnish, or arrange for such transportation or shall hold himself or itself out by advertisement, solicitation, or otherwise as one who sells, provides, procures, contracts, or arranges for such transportation, unless such person holds a broker's license issued by the commission to engage in such transactions; provided, however, that no such person shall engage in transportation subject to this act unless he holds a certificate or permit as provided in this act. In the execution of any contract, agreement, or arrangement to sell, provide, procure, furnish, or arrange for such transportation, it shall be unlawful for such person to employ any carrier by motor vehicle who or which is not the lawful holder of an effective certificate or permit issued as provided in this act; and provided further, that the provisions of this paragraph shall not apply to any carrier holding a certificate or a permit under the provisions of act or to any *bona fide* employee or agent of such motor carrier, so far as concerns transportation to be furnished wholly by such carrier or jointly with other motor carriers holding like certificates

or permits or with a common carrier by railroad, express, or water. (b) A brokerage license shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this act and the requirements, rules and regulations of the commission thereunder, and that the proposed service, to the extent to be authorized by the license, will promote the public interest and the policy declared in this act; otherwise such application shall be denied. Any broker in operation when this act takes effect may continue such operation for a period of one hundred and twenty days thereafter without a license, and if application for such license is made within such period, the broker may, under such regulations as the commission shall prescribe, continue such operations until otherwise ordered by the commission. (c) The commission shall prescribe reasonable rules and regulations for the protection of travelers or shippers by motor vehicle, to be observed by any person holding a brokerage license, and no such license shall be issued or remain in force unless such person shall have furnished a bond or other security approved by the commission, in such form and amount as will insure financial responsibility and the supplying of authorized transportation in accordance with contracts, agreements, or arrangements therefor. (d) The commission and its agents shall have the same authority as to accounts, reports, and records, including inspection and preservation thereof, of any person holding a brokerage license issued under the provisions of this section, that they have under this act with respect to motor carriers subject thereto.''

It is conceded that the requiring of a broker to obtain a license is a reasonable regulation, but it is said that, when considered in connection with (b), (c) and (d) of said § 13, the requirements are impossible of performance and amount to an outright prohibition of the business, in violation of the due process and equal rights clauses of both the state and federal constitutions. We do not now determine whether such is the effect of said

provisions, or whether, under rules that might be established by appellee, appellant could comply with the act and conduct his business under a permit. We are not certain the act has the effect contended for, even though counsel for appellee says it does. The fact remains that appellant has not applied for a permit under the act. But, even if it does, in effect, prohibit the business, because impossible of compliance with the terms of the act, we are unwilling to say the legislature exceeded its authority in enacting the statute. We think what the Supreme Court of Tennessee said, concerning the effect of a similar statute of that state in *Bowen* v. *Hannah* (Tenn.), 71 S. W. 2d 672, is the correct conclusion to be reached and is appropos here. It was there said: "The flexible and comprehensive doctrine of the police power is justifiably invoked, as it may always be for the public safety and welfare in the protection of personal and property rights. Those occupations which are inherently subject to misuse, out of which may readily come oppression and fraud and crime, may not only be regulated, hedged about with safeguards, as a condition of their doing, but may be altogether prohibited, in the wisdom of the legislature, in the exercise of the police power. It is a matter of common knowledge that danger to life and limb and property is attendant upon the practice of conveying unknown and unvouched for persons, or being conveyed by them, in automobiles over the highways. This is especially true when the distances are considerable, through long stretches of sparsely settled districts. Prudent drivers no longer follow the practice of yielding to solicitations for transportations from strangers. And prudent travelers are wary of accepting invitations from strangers for such transportation. The opportunities afforded for holdups, robbery, kidnapping and impositions of many kinds are unlimited, and illustrations of such happenings are common.

"Why then was it not only the privilege, but the duty of the legislature to regulate most strictly the business of the intermediary who proposes to make a profit out of bringing together persons who seek to transport and be transported under such conditions? What is

known as 'hitch-hiking' is prohibited altogether by many ordinances and some statutes. These laws prohibit direct solicitation of such engagements, as conducive to danger to the parties affected and a public menace. If one desires to exercise the privilege of holding himself out to the public as a medium through whom negotiations may be had for such transportation, with its manifest elements of danger already indicated, why should he not be required, first, to make a satisfactory showing of character and responsibility, and, second, to guarantee by indemnity bond that the carriers for whom he contracts will perform in good faith and with reasonable care? The effect is only to limit his dealings in this hazardous enterprise to those for whose integrity he can vouch, and of whose responsibility against recklessness he is sufficiently assured, by indemnity insurance, or otherwise. In view of the nature of the occupation he has chosen, wide discretion is vested in the legislature to determine the extent and character of the restrictions proper to be applied.

"It is insisted that the requirements in the act for bonds are impossible of compliance, and therefore prohibitive, in effect, of the business, thus depriving the complainant below of property rights. If such requirements are essential to protection from the danger inherent, then, nevertheless, it is within the police power to prescribe them, since, if the business cannot be safely conducted, it may be prohibited altogether. And this court has recently declared that 'exercise of the police power, otherwise valid and constitutional, cannot be defeated because property rights are taken or destroyed'."

Similar views are expressed in other cases: *Martin* v. *U. S.*, 100 Fed. 2d 490; *Finn* v. *R. R. Com.*, 2 F. Supp. 891; *Francis* v. *Allen*, 54 Ariz. 377, 96 Pac. 2d 277, 126 A. L. R. 190; *People* v. *Henry*, 131 Cal. App. 82, 21 Pac. 2d 672; *Herring* v. *State*, 60 Okla. Crim. 449, 64 Pac. 2d 921. Appellant cites and relies on three Texas cases, which we think express the minority view and we decline to follow them. The Oklahoma court, in the Herring case, *supra*, said: "In these modern days the congestion of traffic on the highways, the enormous number

of accidents with a great toll of death and injuries, make restrictive regulation of the use of the highways imperative and has tended to make more liberal the decisions of the courts in upholding state legislation on the subject.'' The act under consideration is one form of restrictive legislation in relation to the use of the highways. There are many others. Speed thereon is limited to 50 miles per hour. Hitch-hiking is prohibited. Section 6737, Pope's Digest. Drivers' licenses are required. Overloading is prohibited. Bonds are required of all carriers for hire of persons or property. So, we can see no valid objection to a statute that prescribes the rules under which appellant may do business.

The argument made by appellant as to the invalidity of the act because it interferes with interstate commerce is unsound. Appellant's business is wholly within the state. The fact that he arranges for transportation of passengers in motor cars for points outside this state does not make his business one of interstate commerce. But assuming that the act does incidentally affect interstate commerce, the rule announced by all the courts, and especially by the Supreme Court of the United States, is that a state statute, enacted in the exercise of the police power, will be sustained even though it may indirectly or remotely affect interstate commerce. It was so held in *Bradley* v. *Public Utilities Commission,* 289 U. S. 92, 53 S. Ct. 577, 77 L. Ed. 1053, 85 A. L. R. 1131, quoted in the Bowen case, *supra,* where Mr. Justice BRANDEIS, speaking for the court, said: ''Protection against accidents, as against crime, presents ordinarily a local problem. Regulation to ensure safety is an exercise of the police power. It is primarily a state function, whether the *locus* be private property or the public highways. Congress has not dealt with the subject. 'Hence, even where the motor cars are used exclusively in interstate commerce, a state may freely exact registration of the vehicle and operator's license' (citing numerous cases). And, with application by analogy to the instant case, 'may require carriers to file contracts providing adequate insurance for the payment of judgments recovered for certain injuries resulting from their operations. *Conti-*

*nental Baking Co.* v. *Woodring,* 286 U. S. 352, 52 S. Ct. 595, 76 L. Ed. 1155, 81 A. L. R. 1402.' See, also, *South Carolina State Highway Dept.* v. *Barnwell Bros., Inc.,* 303 U. S. 177, 82 L. Ed. 734, 58 S. Ct. 510.''

We, therefore, conclude that the complaint states a cause of action in a court of competent jurisdiction; that the act applies to the business in which appellant is engaged; and that the act is not open to the attack made against it.

The decree is accordingly affirmed.