Gilberto DOMINGUEZ and Jose Luis MONTALVO
*v.* STATE of Arkansas

CR 86-85                                              720 S.W.2d 703

Supreme Court of Arkansas
Opinion delivered December 8, 1986

430

*Charles A. Potter*, for appellants.

*Steve Clark*, Att'y Gen., by: *Joel O. Huggins*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. This case involves the validity of a regulatory inspection pursuant to Ark. Stat. Ann. § 73-1760(c) and § 73-1773(b) (Repl. 1979), contained in the Motor Carrier Act of 1955 (§§ 73-1754—73-1779 [Repl. 1979 & Supp. 1985]).

Two agents of the Arkansas Transportation Commission, Richard Birtcher and Charles Colwell were parked by the median of the interstate when they observed a U-Haul truck drive by. The truck was occupied by the two male appellants, Gilberto Dominguez and Jose Montalvo. The transportation enforcement officers decided to stop the truck "to see what they were hauling" and the appellants were pulled over. According to the officers, no violation was observed, it was merely a "routine stop."

Birtcher checked the registration, lease agreement and appellants' drivers' licenses and found no problem with any of these documents. Appellants said they were hauling furniture for a man in San Antonio who was going to Indiana. They had no address, but did have a telephone number they were supposed to call when they got to Evansville. Communication was hampered by appellants' limited English. When, at the direction of the officers the appellants opened the back of the truck, the odor of marijuana was apparent. The officers had appellants drive to the next exit for a more thorough search away from the traffic.

The officers mentioned other things they found suspicious: the furniture was used but had been cleaned, and the furniture was not complete for any room but just made up of odd lots. One of the officers went into the truck and opened up a box containing marijuana. The appellants were then handcuffed and read their rights.

Appellants were found guilty of possession with intent to deliver and sentenced to six years and a fine of $15,000. From these judgments, appellants bring this appeal. They raise only one

argument, that the court erred in refusing to suppress the evidence as the result of an illegal search.

The question on appeal is whether the stop and resulting search were authorized under the Arkansas Motor Carrier Act as a constitutionally permissible administrative inspection, as the state argues, or whether, as appellants argue, the stop was not within the scope of the act and therefore the search was illegal and the evidence tainted.

■ The statute from which the ATC agents claim their authority is part of the Arkansas Motor Carrier Act of 1955, Ark. Stat. Ann. §§ 73-1754—73-1779. Section 73-1760(c) provides for the appointment of enforcement officers with full authority throughout the state to make arrests. The pertinent portion reads:

> Such enforcement officers *upon reasonable belief that any motor vehicle is being operated in violation of any provisions of this Act*, shall be authorized to require the driver thereof to stop and exhibit the registration certificate issued for such vehicle, to submit to such enforcement officer for inspection any and all bills of lading, waybills, invoices or other evidences of the character of the lading being transported in such vehicle and to permit such officer to inspect the contents of such vehicle for the purpose of comparing same with bills of lading, waybills, invoices or other evidence of ownership or of transportation for compensation. (Emphasis added).

■ The Fourth Amendment's prohibition against unreasonable searches applies to administrative inspections of private commercial property as well as criminal investigations, *Donovan v. Dewey*, 452 U.S. 602 (1981), and a vehicular stop and detention of its occupants constitutes a seizure under the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648 (1979). Not every search and seizure is forbidden by the Fourth Amendment, only *unreasonable* ones. The central inquiry is the reasonableness under all the circumstances of the particular governmental invasion of a citizen's personal security and that inquiry becomes a dual one—whether the officer's action was justified at the inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Webb v. State*, 269 Ark. 415, 601 S.W.2d 848 (1980); *Terry v.*

*Ohio*, 392 U.S. 1 (1968). The burden of proof is on the party seeking the exemption from the requirement of a warrant. *Rowland* v. *State*, 262 Ark. 783, 561 S.W.2d 304 (1978); *Asher* v. *City of Little Rock*, 248 Ark. 96, 449 S.W.2d 933 (1970). The state must prove that a warrantless intrusion was not in violation of the Fourth Amendment and not subject to constitutional protection. The state has failed to make that showing.

It is not necessary for us to consider the propriety of the search itself under § 73-1760(c), as the initial stop was not authorized by the statute and therefore the search was not proper. *Webb* v. *State, supra.*

The stated purpose of the Motor Carrier Act is the regulation of motor carriers, §§ 73-1755—73-1756. Motor carriers are any persons, who directly of indirectly transport property or passengers for compensation. §§ 73-1756, 73-1758(a)(7), (8), (9). The act does *not* include all vehicles transporting for compensation. It specifically states that nothing in the act shall be construed to include certain vehicles. Specifically exempted from the act are "occasional" or "reciprocal" transporters, those not engaged in transportation by motor vehicle as a regular business. *Duck* v. *Arkansas Corporation Commission*, 203 Ark. 448, 158 S.W.2d 24 (1942); § 73-1758(b)(6). Also exempted are private carriers—those which transport property by motor vehicle where such transportation is incidental to or in furtherance of a commercial enterprise of such persons, other than transportation. Private carriers are subject to the act only with respect to safety of operation and equipment standards. § 73-1758(a)(14), (b)(3). Also excluded are: transporters of a large number of agricultural commodities (with exception of safety operations), several types of building and quarry materials, gasoline and certain related products, certain wood products, all taxi cabs licensed by municipalities, vehicles operated by an agricultural cooperative, and school buses.

Appellants correctly contend the agents went beyond the authority granted by § 73-1760(c). The state does not base the agents' authority on this statute but relies primarily on another section of the act. We think it necessary to address the point, however, to correct a misinterpretation of § 73-1760(c) by the agents. They testified they had authority to make routine stops

without evidence of a violation, and further, that their jurisdiction extended to "anything that might be hauling for hire," which included taxicabs, pickup trucks, panel trucks or anyone being paid to transport goods. It was on this basis the agents believed their authority to stop appellants was derived, that is, the authority to make a routine check of any vehicle that might be hauling for hire.

We reemphasize that *all* vehicles "hauling for hire" are not within the jurisdiction of the act, rather, numerous exceptions are made. But irrespective of whether appellants were within the jurisdiction of the act, the agents were mistaken as to their powers, as there is no authority under § 73-1760(c) to make a "routine check" of any vehicle within their jurisdiction. To the contrary, § 73-1760(c) clearly recites that authorization to make a stop is dependent on *a reasonable belief that a vehicle is in violation of the act*. The agents admitted they detected no violation, that appellants were simply subjected to a "routine stop." That being so, the agents went beyond the authority granted by the legislature and the stop was therefore unlawful.

The state argues the agents' authority is found under another provision of the act which it interprets as allowing administrative inspections such as the one involved in this case. § 73-1773(b) provides:

> The Commission or its duly authorized agents shall, at all times, have access to all lands, buildings, or equipment of motor carriers used in connection with their operation and also all pertinent accounts, records, documents and memoranda now or hereafter existing, and kept or required to be kept by motor carriers.

Administrative inspections have been allowed for routine stops of motor carriers in one jurisdiction, see *State* v. *Williams*, 648 P.2d 1156 (Kan. App. 1982). The two cases are distinguishable, however, both on the facts and on the wording of the statute. And *State* v. *Williams* is not helpful for our purposes. An examination of our own act points to some initial difficulties with the state's contention. We first note there are hurdles that must be overcome in meeting minimum constitutional standards which would include finding sufficient safeguards against unbridled discretion by enforcement officers. See *Marshall* v. *Barlow's*,

*Inc.*, 436 U.S. 307 (1978). Too, a conflict is readily apparent between § 73-1760(c) and § 73-1773, casting doubt on whether the latter authorizes highway stops on demand for routine checks of motor carriers. For § 73-1760(c) authorizes stops only on a reasonable belief of a violation, with other language indicating the statute is clearly applicable to motor carriers (references to the inspection of bills of lading and waybills—terms that would apply only to motor carriers). However, the case before us does not require a determination of the intended purpose or constitutionality of § 73-1773. For as we shall see, even if it could be said the statute authorized routine checks of motor carriers, such an administrative basis would not be sufficient to justify the constitutionality of the stop which occurred here.

The act provides for the inspection of "motor carriers," which includes both authorized and unauthorized carriers. § 73-1758(9). How an agent determines in advance whether a carrier is authorized is not apparent from the act nor anything presented in the record, however, under § 73-1777, all carriers are required to affix to the side of the vehicle the name of the carrier and the certificate or permit number. Certainly, if the statute were to authorize a routine regulatory search, which included highway stops, vehicles so identified could properly be stopped. The problem is determining under what circumstances a vehicle not so identified, as in this case, is subject to a regulatory stop.

The limitations of a vehicle stop are stated in *Delaware v. Prouse*, 440 U.S. 648 (1979), reiterating the standard announced in *United States* v. *Brignoni-Ponce*, 422 U.S. 873 (1975), that warrantless stops of motor vehicles are prohibited by the Fourth Amendment absent specific articulable facts which reasonably support an inference of a violation of the laws respecting use of the vehicle.

Under administrative searches, however, the Fourth Amendment requirement of reasonableness of any intrusion is supported by grounds other than probable cause (or reasonable suspicion). Essentially, business inspections are justified without warrants or probable cause when the need for governmental inspection outweighs the invasion of the individual. This balancing process includes the critical consideration that individuals subject to search are aware of the potential of an

inspection and its scope because of their participation in the regulated activity. See *Donovan* v. *Dewey*, 452 U.S. 594 (1981); *United States* v. *Biswell*, 406 U.S. 311 (1972); *Marshall* v. *Barlow's, Inc.*, 436 U.S. 307 (1978); *Camara* v. *Municipal Court*, 387 U.S. 523 (1967). The business inspection exception to the probable cause requirement would not support a search under § 73-1773 of vehicles not clearly within the regulated business.

▪ Those vehicles not clearly identifiable as motor carriers which could conceivably fall within this act include a significant number of vehicles using the highways. Of these, a substantial number could be stopped which are not motor carriers. For such individuals, the essential element is absent which makes an administrative search reasonable—they have no participation in the regulatory scheme and therefore have no awareness or anticipation of an inspection. A search on the basis of the administrative authority would be constitutionally objectionable for those not within the business. *Donovan, supra*, at 599. Therefore, neither is it justified, as the state suggests, to use that authority to make stops of those who might be avoiding regulation through anonymity or disguise. It would be a circumvention of the Fourth Amendment if the business exception to the probable cause or warrant requirement could be used wholly out of the context of its justification and applied to those searches intended for what amounts to no more than the detection of illegal activity from amidst other lawful conduct.

Neither have we found cases dealing with administrative searches that have held or suggested that the administrative basis alone can be used as justification to extend searches beyond those in the business in order to find individuals whose specific violation is the avoidance of regulation. The reason is plain, as we have seen. Such administrative authority requires more in order to broaden it to one of a regulatory scheme which includes those not in the business. It was stated in *Delaware* v. *Prouse, supra*:

> There are certain "relatively unique circumstances" in which consent to regulatory restrictions is presumptively concurrent with participation in the regulated enterprise. [Cites omitted.] Otherwise, regulatory inspections unaccompanied by any quantum of individualized articulable suspicion must be undertaken pursuant to previously

specified "neutral criteria." *Marshall v. Barlow's, Inc.*, 436 U.S. at 323.

Here, § 73-1773 could not permit any extension of the administrative authority beyond those in the business. It obviously contains no criteria providing a basis for stops of suspected unauthorized carriers and would be left to the unfettered and unbridled discretion of the agents. Nor did the agents' testimony indicate guidelines had been set up within the agency. To the contrary, their testimony revealed that the stops were no more defined than anyone "who was hauling for hire," a basis wholly lacking in "neutral criteria."

We do not suggest that neutral guidelines alone could replace the requirements in *Prouse* and meet constitutional standards. See *Marshall* v. *Barlow's, Inc., supra*, at 321-323. We merely observe that as a possible alternative to either *Prouse* or a business inspection, such an approach would fail under § 73-1773.

More significantly we note that the state offered no proof below, nor even suggested that stops that might go so far as to involve the innocent driver of a pickup, panel truck or U-Haul, or even a passenger car under a statute intended to regulate motor carriers, were either crucial to the statutory scheme and its purpose or sufficiently productive to justify the intrusion on a driver's Fourth Amendment rights where there was no expectation of such an intrusion and less intrusive means were available. See *Delaware* v. *Prouse, supra*. There was not even evidence presented to show justification for such stops of vehicles that were within the act.

The burden of proof was on the state to show an exception to the Fourth Amendment requirements. The state was incorrect in its initial assertion and under the business inspection theory § 73-1773 cannot authorize routine checks of vehicles not clearly identified as motor carriers operating within the regulated business. But neither did the state demonstrate there were any guidelines used in conjunction with the statute or any evidence to suggest the need for extending the authority under § 73-1773 to stops that would include vehicles not within the act. Such stops would therefore be constitutionally impermissible under § 73-1773. *Delaware* v. *Prouse, supra*; *Marshall* v. *Barlow's, Inc., supra*.

█ In order to meet minimum constitutional requirements, the state must show under *Prouse* there were articulable facts which *reasonably supported an inference* of a violation of the laws respecting use of the vehicle. Under § 73-1773, the agents would have to demonstrate that the facts reasonably supported an inference that appellants were nonauthorized motor carriers—that appellants were transporting property or persons for compensation on a regular basis without the proper authorization from the commission.

The agents testified the truck was being driven by two men, whereas a U-Haul "usually had one driver or a man and his wife and family, or pulling a car." They also thought it pertinent that the vehicle had a Connecticut license,—"which is a long way from Arkansas and it appeared to be going back in that direction to return the truck or return a load, and it was two male subjects in there which appeared that they may have a load that would take two subjects to load and unload."

█ While it can be assumed the U-Haul was carrying goods of some kind, the fact that the cab was occupied by two men rather than a single man or a couple does not support an inference pertinent to the Motor Carrier Act—including an inference that the occupants were transporting goods for compensation. We note in this regard the presence of both male and female truckers on the highways today and the fact that single people with or without a companion will make moves as well as married couples. In short, the sex of the occupants of a truck does not tell us much, and why Connecticut license plates on a truck from an interstate rental agency should arouse suspicion, is not explained.

Aside from suspicion that appellants were transporting for hire, the agents had no other basis for a belief they were carriers under the act. Specifically exempted are occasional transporters who do not regularly engage in transportation for compensation. The agents in this case had no idea whether the appellants were engaged on a regular basis, if in fact they were being paid. Even by the time of trial, the agents did not have any idea on this point, nor did they think it was significant. There is no contention the appellants were acting as unauthorized carriers.

In *United States* v. *Cortez*, 449 U.S. 411 (1981) the Supreme Court found under certain circumstances a police officer may rely on his experience and make "inferences and deductions that might well elude an untrained person." The inferences and deductions made by the agents in this case have escaped us. The fact that an officer is experienced does not obligate a court to accept all of his suspicions as reasonable. Nor does experience alone mean an officer's perceptions are justified by the objective facts. *United States* v. *Buenaventura-Ariza*, 615 F.2d 29 (2d Cir. 1980). And in *Cortez*, the inferences and deductions had been fully explained at the suppression hearing so that both a particularized and an objective basis for the stop were established. That was not the case here, and we can say that two men in a U-Haul with Connecticut license plates, absent further explanation by the agents, does not support an inference that appellants were transporting goods for hire on a regular basis, and were unauthorized to do so. The state has failed to show that the stop was justified under the minimal constitutional standards of *Delaware* v. *Prouse, supra.*

Reversed and dismissed.

HICKMAN, J., dissents.

DARRELL HICKMAN, Justice, dissenting. I believe the state proved that these officers had reasonable cause to stop and inspect this U-Haul driven by two males with a Connecticut license plate. It was not a routine stop and there was probable cause for the search. The officers believed the vehicle could be either carrying contraband or illegally transporting goods. From their experience the officers thought something was amiss, and that suspicion justified the stop. After talking with the two men from Texas, who had Indiana drivers' licenses, the officers' suspicions were further aroused and the search ensued. The marijuana was found in a box behind some junk furniture.

Since the initial stop was proper, the search was not unreasonable. I would affirm the convictions.