James Jesse LILLEY  *v.*  STATE of Arkansas

CA CR 03-1285                                    199 S.W.3d 692

Court of Appeals of Arkansas
Opinion delivered December 8, 2004

[Rehearing denied January 19, 2005.]

*Christian & Byars,* by: *Eddie Christian, Jr.,* for appellant.

*Mike Beebe,* Att'y Gen.,·by: *Vada Berger,* Ass't Att'y Gen., for appellee.

LARRY D. VAUGHT, Judge. James Jesse Lilley entered a conditional plea of guilty to possession of marijuana with intent to deliver and possession of drug paraphernalia. He was sentenced to twenty-four months' imprisonment and a suspended imposition of sentence for ninety-six months. He appeals the denial of his motion to suppress evidence seized by law-enforcement officers during a search of his rental car following a traffic stop. In his motion, Lilley argued that officers violated Rule 3.1 of the Arkansas Rules of Criminal Procedure. Specifically, he asserted that because evidence was seized from his vehicle after the legitimate purpose of the valid traffic stop was complete, and the officers did not have a reasonable suspicion that he was committing, or had committed, or was about to commit a felony or a misdemeanor involving danger to persons or property, the evidence should have been suppressed. We agree and reverse.

On December 4, 2002, Officer Michael Bowman of the Van Buren Police Department was patrolling Interstate 40 when he observed a white Chevrolet traveling eastbound. As Officer Bowman followed the vehicle, in the course of a quarter of a mile, he observed the vehicle drive off of the road, onto the right shoulder, on three occasions. Officer Bowman pulled the vehicle over for the observed traffic infraction. Officer Bowman approached the automobile's passenger side in order to explain to the car's driver, Lilley, the reason for the stop. At this point Officer Bowman smelled the strong odor of air freshener and noticed several energy-drink cans on the Chevrolet's floorboard. While talking to Lilley, Officer Bowman observed that Lilley appeared "extremely nervous" because his hands were shaking despite the fact that it was warm in the car.

Officer Bowman asked Lilley for his license and the car's paperwork, which included a rental agreement. Officer Bowman then asked Lilley to accompany him to the patrol car while he issued a warning ticket. The two men sat in the patrol car as Officer Bowman ran a check on Lilley's driver's license and conducted a criminal-history check on Lilley. While the checks were being conducted, Lilley revealed to Officer Bowman that he was driving home to Chesapeake, Virginia, to visit his mother. Lilley also stated that he planned to drive back to California after a ten-day visit to Virginia. Officer Bowman inquired as to why the one-way rental agreement listed William Haller as its renter and listed Lilley as only an additional driver. Lilley explained that Haller's name was on the contract because Lilley did not have a credit card, which was required in order to rent the vehicle. Lilley further stated that in California he worked in a farmer's market. Officer Bowman testified that he found it odd that Lilley worked on a farm because he did not appear to be "the farming type," and his hands were not "beat up." During the course of this conversation, Officer Bowman testified that Lilley was shaking and fidgeting, as though "he was having a hard time controlling himself."

After the criminal-history check was completed, Officer Bowman returned Lilley's driver's license and rental agreement and issued the warning ticket. However, Officer Bowman did not tell Lilley that he was free to go. While the two men were still in the patrol car, Officer Bowman asked Lilley if he had anything illegal in his car. Officer Bowman observed an increase in Lilley's nervousness level. Officer Bowman then specifically inquired whether Lilley had guns or dead bodies in his automobile. Lilley looked at the officer, kind of laughed, and said, "No." Officer Bowman then asked Lilley if he had any marijuana in the car. Lilley looked away from Officer Bowman and, again, denied the allegation, but this time in a softer tone. Next, Officer Bowman made a similar, leading inquiry about cocaine and methamphetamine. In responding, Lilley again made eye contact and did not turn away from Officer Bowman as he answered in the negative.

Officer Bowman then asked Lilley for consent to conduct a search of Lilley's Chevrolet. Lilley refused the request. In response to the refusal, Officer Bowman stated that he was going to run his drug dog around the car anyway, just to be sure no drugs were in the car. By this juncture, Officer Olen Craig of the Arkansas State Police had arrived at the scene and sat with Lilley in the patrol car while Officer Bowman escorted the dog around Lilley's car. The

drug dog alerted on Lilley's trunk. Officer Bowman explained to Lilley that the alert established probable cause to justify a search of the car. During the search, Officer Bowman discovered three duffel bags containing several large bricks of marijuana, and Lilley was arrested.

Lilley filed a timely motion to suppress the marijuana. Following an evidentiary hearing, the trial court denied the motion to suppress, concluding that after a police officer has concluded a routine traffic stop, the officer is authorized to continue to detain the motorist and conduct a canine sniff of the vehicle. The court noted that an officer may do so even though he has no reasonable suspicion that the vehicle may contain narcotics, so long as the officer has a police dog at his immediate disposal.

On appeal, Lilley argues that the marijuana should have been excluded because the search that uncovered it was the tainted fruit of an unreasonable detention. His argument is par-ticularly persuasive in light of our supreme court's holding in *Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004). In *Sims*, the court concluded that Rule 3.1 of the Arkansas Rules of Criminal Procedure[1] requires that at the conclusion of a traffic stop an officer must possess reasonable suspicion before the officer can detain the motorist in order to run a drug dog around the motorist's vehicle. The State acknowledges that now, in the post-*Sims* landscape, Rule 3.1 alone is an insufficient ground to justify the detention. However, the State counters that the trial court was still correct in its denial of Lilley's motion to suppress because Officer Bowman developed, during the course of the routine traffic stop, reasonable suspicion to detain Lilley in order to permit a dog sniff of his

---

[1] Under Ark. R. Crim. P. 3.1, a detention without arrest may transpire under certain circumstances:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

automobile. Officer Bowman testified that before he had established probable cause he did suspect criminal activity was afoot. However, Officer Bowman acknowledged that the reasonableness of his suspicion did not manifest — become more than a hunch — until after he directly asked Lilley about marijuana and received an evasive answer.

Thus, as a threshold question, we must determine whether Lilley's continued detention in the patrol car, after the completion of a valid stop for a traffic violation, constitutes a seizure within the purview of the Fourth Amendment. If the detention is a seizure, we must also determine the issue of whether the law-enforcement officer possessed reasonable suspicion to detain Lilley in order to conduct the dog sniff of his automobile.

■ Lilley does not contend that the initial stop of his automobile was in violation of the Constitution. Indeed, he acknowledges that a traffic violation—however minor—creates probable cause to make the stop. *Flores v. State*, 87 Ark. App. 327, 194 S.W.3d 207 (2004). In Lilley's case, Officer Bowman's observation of Lilley's vehicle veering from the roadway provided probable cause for Officer Bowman to stop his automobile. Accordingly, there is no dispute regarding the legality of the initial stop of Lilley's automobile. Rather, Lilley claims that the length of the traffic stop was excessive, constituting an illegal detention, prior to the initiation of the drug-dog sniff.

■ During an investigative stop, officers may check for weapons and may take any additional steps "reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Hensley*, 469 U.S. 221, 235 (1985); *see also United States v. Dawdy*, 46 F.3d 1427, 1430 (8th Cir. 1995); *Roberson v. State*, 54 Ark. App. 230, 235, 925 S.W.2d 820, 823 (1996). Here, Officer Bowman conducted routine procedural checks relating to Lilley's criminal history and the validity of his driver's license and rental agreement. These "additional steps" constitute a reasonable detention prior to Officer Bowman's issuance of the warning ticket to Lilley. However, after the traffic stop was complete — once Lilley received his warning ticket, and his driver's license and rental agreement were returned — Officer Bowman continued to question Lilley.

■ Lilley contends that Officer Bowman violated his Fourth Amendment rights by continuing to detain him after the

conclusion of the traffic-violation stop. The State counters that because Lilley consented to the continued detention after Officer Bowman's issuance of the warning ticket, there was no seizure. Indeed, it is axiomatic that not all personal contacts between law enforcement officers and citizens constitute seizures that implicate the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1 (1968). There is no bright line between a consensual encounter and a *Terry* stop; rather, the determination is a fact-intensive one that turns upon the unique facts of each case. *See Jefferson v. State*, 349 Ark. 236, 76 S.W.3d 850 (2002). A seizure does not occur simply because a law enforcement officer approaches an individual and asks a few questions or requests permission to search an area — even if the officer has no reason to suspect the individual is involved in criminal activity — provided the officer does not indicate that compliance with his request is required. *Id.* However, a *Terry* stop can be transformed into a seizure when the questioning is intimidating, threatening, or coercive. *Scott v. State*, 347 Ark. 767, 67 S.W.3d 567 (2002). Police can be said to have seized an individual "if in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Jefferson*, 349 Ark. at 245, 76 S.W.3d at 855. Conversely, so long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual, and no reasonable suspicion is required. *Id.*

Here, Lilley was instructed to exit his vehicle and sit in the patrol car so the officer could issue a written warning ticket. However, after Officer Bowman completed the traffic stop — and the reason for the detention expired — Lilley was not expressly or implicitly told that he was free to go; nor was he asked if he was willing to answer Officer Bowman's follow-up questions, which were leading questions that commanded a response. As such, we are not convinced that a reasonable person in Lilley's situation would have felt free to leave Officer Bowman's patrol car after the completion of the initial traffic stop. Therefore, the post-traffic stop questioning was not consensual, and the Fourth Amendment is implicated.

Thus, our analysis now turns to whether the facts of this case offer a legal basis for Officer Bowman's continued restraint of Lilley. Unless Officer Bowman had a reasonable, articulable suspicion for believing that criminal activity was afoot,

his continued detention of Lilley became unreasonable after he finished processing Lilley's traffic ticket. *Thompson v. State*, 303 Ark. 407, 797 S.W.2d 450 (1990). An articulable or reasonable suspicion requires "facts or circumstances that give rise to more than a bare, imaginary, or purely conjectural suspicion." *Stewart v. State*, 332 Ark. 138, 145, 964 S.W.2d 793, 797 (1998); Ark. R. Crim. P. 3.1 (2002). Our analysis is guided by Arkansas Rule of Criminal Procedure 2.1, which defines reasonable suspicion as "a suspicion based upon facts or circumstances" that "of themselves do not give rise to the probable cause requisite to justify a lawful arrest," but that "give rise to more than a bare suspicion; that is a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion." Ark. R. Crim P. 2.1 (2002). Initially, we must note the unique temporal proximity of this case — the suppression hearing was held prior to our supreme court's *Sims* decision and, therefore, it was presumed by the court and Officer Bowman that Lilley could be detained under Rule 3.1 for a drug-dog sniff without a reasonable suspicion that criminal activity was afoot. As such, neither the trial court's analysis nor Officer Bowman's testimony focused on whether there was a reasonable suspicion sufficient to detain Lilley. Moreover, Officer Bowman admitted that he did not have a reasonable suspicion of Lilley's involvement in any sort of criminal activity until questioning Lilley about contraband in his vehicle and receiving a more evasive response when mentioning marijuana. However, because this conversation took place during the constitutionally infirm portion of Lilley's detention, we must consider only Officer Bowman's suspicions prior to the conclusion of the traffic stop. *Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001).

■ Officer Bowman has acknowledged that his initial suspicions—prior to Lilley's increased evasiveness and nervousness following the traffic stop—amounted to nothing more than what courts have termed a "hunch." *See Reid v. Georgia*, 448 U.S. 438, 440–41 (1980); *United States v. Beck*, 140 F.3d 1129, 1136 (8th Cir. 1998); *Laime*, 347 Ark. at 162, 60 S.W.3d at 477. Further, our supreme court has held that whether "there is reasonable suspicion depends on whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity." *Smith v. State*, 343 Ark. 552, 570, 39 S.W.3d 739, 750 (2001) (citing *Hill v. State*, 275 Ark. 71, 628 S.W.2d 284 (1982)); *see also* Ark. Code

Ann. § 16-81-202 (1987). However, the State contends that despite Officer Bowman's belief to the contrary, he did in fact possess "specific, particularized, and articulable reasons" of sufficient caliber to extend the detention beyond the initial stop. Specifically, the State contends that reasonable suspicion for Lilley's renewed detention arose from the following six circumstances: (1) Lilley was driving a rental car rented by an absent third party; (2) Lilley had a one-way rental agreement, despite his statement that he planned to return to California in ten days; (3) Lilley's rental car smelled of air freshener; (4) Lilley exhibited a nervous demeanor; (5) Officer Bowman observed energy drink cans on the floorboard; (6) Officer Bowman did not believe that Lilley worked as a farmer.

It is essential that when we consider these circumstances, all of which presented during Lilley's lawful detention, we do so in the proper context. We view these seemingly innocuous circumstances through the lens of a well-trained officer relying on his experience to make " 'inferences and deductions that might well elude an untrained person.' " *Dominguez v. State*, 290 Ark. 428, 439, 720 S.W.2d 703, 708 (1986) (quoting *United States v. Cortez*, 449 U.S. 411 (1981)). However, an officer's perceptions and inferences must be justified by the objective facts. *Id.*, 720 S.W.2d at 706. Here, Officer Bowman, a well-trained police officer with nearly a decade of patrol experience, did not manifest a reasonable, articulable suspicion that criminal activity was afoot based on the circumstances surrounding Lilley's initial detention. The State asserts that Officer Bowman's conclusion was not justified by the objective facts of this case.

In our consideration of these facts, we first review the criminal implications associated with Lilley driving a rental car. First, there is nothing inherently suspicious in the use of a rental vehicle, even though rented by a third person, to travel. *Beck*, 140 F.3d at 1137; *see also United States v. Wood*, 106 F.3d 942, 947 (10th Cir. 1997) (finding that the defendant's use of a rental car was not inherently suspicious). Lilley told Officer Bowman that he relied on a third party to perfect the rental because he did not own a credit card. The rental agreement did list Lilley as a driver, and Officer Bowman had no reason to suspect that Lilley's explanation was untrue. Second, we see nothing objectively suspicious in Lilley's decision to contract for a one-way rental, especially

considering the fact that Lilley revealed to Officer Bowman his plans for a prolonged stay of ten days at his mother's home. Third, the fact that Officer Bowman smelled air freshener in a rental car is not particularly damning. Admittedly, air freshener is a common masking agent. However, it is not exclusively used for masking odors associated with narcotic transport. Indeed, the fact that a rental car smelled of air freshener could reasonably be explained by the fact that the fragrance was used to mask a myriad of smells, notably cigarette smoke, left by prior users.

The fourth factor noted by the State, Officer Bowman's subjective assessment that Lilley was nervous during the traffic stop, is the most persuasive indicator of wrongdoing. Indeed, nervous behavior is a pertinent factor in determining reasonable suspicion. *Jefferson*, 349 Ark. at 246, 76 S.W.3d at 856. However, it cannot be deemed unusual for a motorist to exhibit signs of nervousness when confronted by a law-enforcement officer. Thus, mere nervousness, standing alone, cannot constitute reasonable suspicion of criminal activity and grounds for detention. *Laime*, 347 Ark. at 159, 60 S.W.3d at 475.

As to the remaining circumstances presented by the State, we would be hard pressed to assign any nefarious meaning to them even if an experienced officer testified that he found them to be strong indicators of criminal activity. The presence of caffeinated energy-drink cans is entirely consistent with innocent long-haul travel, where the consumption of caffeine is common. Lilley testified that he was attempting to drive "straight through" in order to beat an incoming winter storm. In the absence of contradictory information, energy-drink cans cannot reasonably be said to give rise to suspicion of criminal activity. Further, Officer Bowman's subjective disbelief of Lilley's stated vocation amounts to nothing more than a miscommunication. Considering that Lilley claimed to work, not as a farmer, but in a farmer's market, it seems reasonable that his hands would not be cut and calloused. There is nothing inherently suspicious about having particularly unscathed hands.

Although none of these circumstances, individually, are consistent with a finding that Officer Bowman's absence of reasonable suspicion was objectively sound, the inquiry does not end here. Lastly, we must consider whether this series of acts that appear innocent, when viewed separately, objectively warranted

further investigation when viewed together. *Beck*, 140 F.3d at 1139. Like Officer Bowman, we conclude that these six factors, whether viewed individually or in combination, do not generate sufficient objectively-reasonable suspicion to justify Lilley's renewed detention.

Accordingly, because Officer Bowman's' extended detention of Lilley was without reasonable suspicion, the evidence gained — via leading questions — after the traffic stop was completed was tainted by the unlawfulness of that detention and should have been suppressed. *See Wong Sun v. United States*, 371 U.S. 471 (1963). Further, the drug evidence subsequently found during the search of the Chevrolet constitutes the fruit of an unlawful seizure and must also be suppressed. *Id.* Therefore, the trial court's denial of the motion to suppress and Lilley's conviction are reversed, and the case is remanded.

Reversed and remanded.

PITTMAN and HART, JJ., agree.