Jose AYALA *v.* STATE of Arkansas

CA CR 04-50 203 S.W.3d 659

Court of Appeals of Arkansas
Opinion delivered February 16, 2005

*Charles M. Duell,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Laura Shue,* Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant Jose Ayala was convicted by a jury of possession of marijuana with intent to deliver. He was sentenced to twenty-four years in prison and fined $75,000.00. Mr. Ayala's sole point on appeal is that the trial court erred in failing to grant his motion to suppress the marijuana seized by the police. He contends that the search of his vehicle was unreasonable, and thus violated the Fourth Amendment of the United States Constitution as well as Article 2, § 15 of the Arkansas Constitution. We find no error and affirm.

Officer Jeff Smith testified for the State at the suppression hearing. He stated that he is a canine officer and was patrolling Interstate 40 in Crawford County at about 9:00 a.m. on August 11, 2002. Officer Smith was parked on the side of the highway and observed a Chevy S10 Blazer, which was being driven by Mr. Ayala, traveling sixty-six miles per hour in a sixty-mile-per-hour construction zone. Officer Smith decided to follow the vehicle, and while he was following he received information that the vehicle had been rented in California.

About five miles from where he observed the speeding violation, Officer Smith conducted a traffic stop. He approached the vehicle and spoke with Mr. Ayala from the passenger side. According to Officer Smith, he could smell a strong odor of what appeared to be fabric softener sheets coming from the vehicle, and he testified that this raised his suspicion that narcotics were being masked. Officer Smith testified that Mr. Ayala was nervous and shaking, and that he almost dropped his paperwork when he was asked to provide it. Mr. Ayala told Officer Smith that he was headed to Tennessee and then Florida. Officer Smith noticed a very large suitcase in the back of the Blazer, and he returned to his patrol car with Mr. Ayala's paperwork.

While in his patrol unit, Officer Smith found that Mr. Ayala's driver's license was valid and that "everything was in order." The rental agreement showed that the vehicle was rented on August 9, 2002, and was due back in Los Angeles on August 13, 2002, at 1:30 p.m. Officer Smith thought it suspicious that Mr. Ayala was driving to Florida, yet the rental car was due to be returned in California in just two days, so he called for backup.

After the backup officer arrived, Officer Smith again approached the Blazer and asked Mr. Ayala to exit to the rear of the vehicle. Mr. Ayala complied, and while still holding his paperwork, Officer Smith asked if there were any drugs in the vehicle. Mr. Ayala then invited Officer Smith to conduct a search, nodding his head in the direction of the truck and stating, "if you would like to check." At that time, Officer Smith did not immediately search the vehicle but ran his canine around it. The dog alerted to drugs by biting and scratching at the door seam on the driver side. Officer Smith then opened the car door and opened the suitcase, and found 273 pounds of marijuana.

Mr. Ayala testified on his own behalf, and denied being nervous. Mr. Ayala testified:

> I remember he asked me if there was any drugs after he run the dog through. Like he said, for me to tell him; otherwise, he was going to search for himself. What I'm saying is he ran the dog around the car and then he asked me if there were any drugs or narcotics in the car. Then he asked me if he could search the car. When he asked me that, I recall saying, you gotta do what you gotta do.

A video/audio tape taken from the patrol car showed that, in fact, Mr. Ayala invited Officer Smith to search the vehicle before the canine was used.

For reversal, Mr. Ayala argues that the marijuana should have been suppressed because the search was illegal. Mr. Ayala does not challenge the legality of the stop, but contends that after Officer Smith finished checking his paperwork and the purpose of the stop was complete, he lacked authority to continue the detention. Mr. Ayala cites *United States v. Mesa*, 62 F.3d 159 (6th Cir. 1995), where the appeals court held that once the purpose of a traffic stop is completed, the police officer cannot further detain the vehicle or its occupants unless something that occurred during the traffic stop generated reasonable suspicion to justify further detention. Mr. Ayala also cites *United States v. Lee*, 73 F.3d 1034 (10th Cir. 1996), where the appeals court held that an encounter initiated by a traffic stop may not be deemed consensual unless the driver's documents have been returned to him. Mr. Ayala contends that, absent any reasonable suspicion of other criminal activity, Officer Smith was obligated to return the paperwork and Mr. Ayala should have been free to leave. Because the consent and

canine sniff occurred at a time after further detention was unlawful, Mr. Ayala argues that the marijuana was illegally detected and seized.

Mr. Ayala further submits that admission of the marijuana could not be based on reasonable suspicion of criminal activity by Officer Smith, because there was none. He asserts that his nervousness and the rental agreement did not give rise to any reasonable cause, and further contends that we cannot consider Officer Smith's testimony about the odor of fabric softener. Mr. Ayala notes that the audio tape reveals statements by Officer Smith about Mr. Ayala's nervousness, and the officer's suspicions regarding the rental agreement, but contains no statements making reference to fabric softener. Thus, Mr. Ayala maintains that Officer Smith did not find the fabric softener until he searched the suitcase.

We agree with Mr. Ayala's argument that, absent reasonable suspicion, Officer Smith lacked authority to continue his detention after he checked Mr. Ayala's paperwork and the purpose of the stop had been completed. In this regard, we are guided by our supreme court's recent decision in *Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004). In that case, the appellant was stopped for a moving violation, and after the officer returned appellant's identification information, appellant began walking back to his vehicle and the officer then asked for consent to search. The appellant refused, but the officer held appellant long enough to conduct a canine sniff. The dog alerted, and drugs were found. The supreme court reversed the denial of appellant's motion to suppress, citing *United States v. Mesa, supra,* and holding that because the purpose of the traffic stop was complete, the officer's continued detention was unlawful absent reasonable suspicion, and no reasonable suspicion existed.

The State argues that the instant case is distinguishable from *Sims v. State, supra,* because Officer Smith did not return the paperwork and tell Mr. Ayala he was free to leave. However, we cannot agree with this distinction because it is evident that the purpose of the traffic stop was completed, and thus absent any reasonable suspicion it was the officer's duty to return the paperwork, issue a citation or warning if necessary, and discontinue the detention. We distinguish this case from *Illinois v. Caballes,* ___ U.S. ___ (Jan. 24, 2005), in which the use of a narcotics-detection dog during a traffic stop was upheld. In *Caballes* the canine was walked around appellant's vehicle by one officer while the other

officer was in the process of writing the appellant a warning ticket. Nor do we agree that, in the absence of reasonable suspicion, Mr. Ayala's consent validated the search. This is because, after the purpose of the traffic stop was complete, the ensuing encounter was not consensual. *See United States v. Sandoval*, 29 F.3d 537 (10th Cir. 1994).

Notwithstanding the fact that the continued detention of Mr. Ayala was not consensual, we hold that it was nonetheless authorized because Officer Smith had reasonable suspicion that Mr. Ayala was committing a felony. Arkansas Rule of Criminal Procedure 3.1 provides:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in he officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

Rule 2.1 defines "reasonable suspicion" as "a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion."

 Officer Smith testified that Mr. Ayala was very nervous to the point where he was shaking and almost dropped his paperwork. While nervousness alone cannot constitute reasonable suspicion of criminal activity and grounds for detention, *see Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001), there were other factors that when combined with Mr. Ayala's nervousness gave rise to reasonable suspicion of criminal activity. Mr. Ayala represented that he was traveling to Florida to visit family, and yet his rental car was due back in Los Angeles in just two days. Unusual travel plans may provide an indicia of reasonable suspicion. *See United States v. Sokolow*, 490 U.S. 1 (1989). Moreover, Officer Smith testified that

he smelled a strong odor of fabric softener. The presence of a masking odor has been held to constitute a factor in determining reasonable cause. *See United States v. Foley*, 206 F.3d 802 (8th Cir. 2000). While Mr. Ayala submits that the trial court could not consider the odor of fabric softener as a factor because it was not articulated on the audio tape, this is incorrect because Officer Smith testified that he immediately detected the odor upon approaching the vehicle, and it was the trial court's duty to assess witness credibility. *See Scott v. State*, 347 Ark. 767, 67 S.W.3d 567 (2002). Finally, the presence of a very large suitcase was suspicious in light of a car-rental agreement lasting only four days.

We acknowledge that, in a somewhat similar case, we recently reversed a trial court's denial of a motion to suppress because the officer lacked reasonable suspicion to continue the detention after a traffic stop was complete. *See Lilley v. State*, 89 Ark. App. 43, 199 S.W.3d 692 (2004) (currently under review by the Arkansas Supreme Court). However the case at bar is distinguishable for two reasons. First, the officer in the instant case detected a strong odor of fabric sheets, as opposed to air freshener, and testified that about seventy-five percent of the controlled substances he has seized on I-40 were masked with fabric sheets. Next, the travel plans and rental agreement were much more suspicious in this case than in *Lilley v. State, supra*.

In reviewing the denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Simmons v. State*, 83 Ark. App. 87, 118 S.W.3d 136 (2003). Based on our review of the totality of the circumstances in this case, we hold that the trial court committed no error in finding that Officer Smith had reasonable suspicion to continue his detention of Mr. Ayala, and that the marijuana was legally seized because it was the result of consent and a canine sniff that occurred during the lawful detention. Therefore, we affirm Mr. Ayala's conviction.

Affirmed.

GLADWIN, J., agrees.

NEAL, J., concurs.