**Michal K. GARLAND, Appellant,**

v.

**Samuel W. PEEBLES, M.D., Appellee.**

**No. 92–3899.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 17, 1993.

Decided July 29, 1993.

Rehearing Denied Sept. 1, 1993.

George R. Wise, Jr., Little Rock, AR, argued, for appellant.

Calvin J. Hall, Little Rock, AR, argued (Laura Hensley Smith, on the brief), for appellee.

Before WOLLMAN and LOKEN, Circuit Judges, and HUNTER,[*] Senior District Judge.

WOLLMAN, Circuit Judge.

Michal Kay Garland appeals from the district court's[1] dismissal under Federal Rule of Civil Procedure 41(b) of her medical malpractice suit against Samuel W. Peebles, M.D., for failure to prosecute. We affirm.

## I.

Garland, represented by Charles Hicks and Charla Tindall, filed this diversity action on March 21, 1991, alleging that Dr. Peebles had negligently failed to diagnose and treat her breast cancer. Garland's complaint stated that she visited Dr. Peebles in Nashville, Arkansas, for a routine gynecological and breast examination in October 1985. At that time, Dr. Peebles detected a lump in Garland's left breast. In December 1985, Garland underwent a mammogram to determine the presence of cancerous tissue. Garland alleged that Dr. Peebles advised her that the mammogram indicated that she had fibrocystic disease of the breast, a non-cancerous condition. She further alleged that Dr. Peebles told her that the lump represented no real danger and could be reduced by her reducing her intake of caffeine. She stated that she continued to consult Dr. Peebles about the lump until April or May 1986 and

[*] The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

[1] The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

that he continued to tell her not to be concerned.

Upon moving to Dallas, Texas, Garland consulted Dr. David Bookout in February 1987. Garland alleged that Dr. Bookout noticed the same lump that Dr. Peebles had detected. Dr. Bookout referred Garland to Linda Frame, R.N., director of the Griffiths Hale Breast Center at the Presbyterian Hospital in Dallas, for a mammogram. The mammogram indicated that the lump was cancerous. In April 1987, Garland underwent surgery to remove the cancer. In December 1990, however, Garland learned that her breast cancer had reoccurred, and in January 1991 she underwent a mastectomy. Following her mastectomy, Garland's physicians informed her that the cancer had spread and was incurable.

This case was initially set for trial on March 23, 1992. On February 7, 1992, Garland moved for a continuance. The court granted the motion and reset the trial for June 22, 1992. Upon request by both parties, the court once again continued the case and rescheduled the trial for August 17, 1992. Again upon the request of both parties, the court continued the case for a third time on August 14 and reset the trial for the week of November 2, 1992.

On September 28, 1992, Garland's attorney Hicks filed a motion to withdraw his firm from the case. On September 30, Hicks filed a supplemental motion to withdraw, which stated that his firm could not present Garland's case consistent with her desires or understanding of the underlying facts. Additionally, the motion stated that this conflict had created a dilemma, making it impossible for Hicks's firm to go forward without creating further conflicting circumstances.

On September 30, the district court initiated a telephone conference call with Hicks and counsel for Dr. Peebles. Hicks informed the court that he had been aware of the facts constituting his asserted conflict since June 1992. He further stated that discovery was far from complete and that if he was to continue as counsel, he could not be ready for trial by November 2.

In an order filed October 9, 1992, the court first refused to grant a continuance. The court noted that the case had been filed more than eighteen months earlier and already had been set for trial several times. The court also denied Hicks's motion to withdraw as counsel of record. Based on Hicks's comments, the court was unpersuaded that Hicks had an insurmountable conflict that would prevent him from proceeding with the trial on November 2. Nonetheless, the court stated that if and when Hicks or Garland secured new counsel who could assure the court that the case would be ready for trial within ninety days of the court's order, the court would reconsider Hicks's motion to withdraw and address a motion for continuance.

On October 27, 1992, Garland moved to add William Wilson and Gary Corum as additional counsel of record. The motion stated that Wilson and Corum had accepted representation knowing that the trial had been scheduled for the week of November 2. The court took no formal action on this motion, and Hicks did not renew his motion to withdraw.

The trial was ultimately scheduled to begin November 4, 1992. On the morning of November 4, Garland's attorneys Corum, Wilson, Tindall, and Wayne Dowd requested a hearing to present a motion to withdraw as counsel for Garland. At the hearing, they stated that certain evidence, discovered only the previous night, made it impossible for them, as a matter of professional ethics, to proceed with the case as counsel for Garland. Based on the attorney-client privilege, all counsel declined to divulge the precise reason for their motion. They further stated that Garland had objected to their decision and had requested that they ask the court to allow her to speak privately with the court. Dr. Peebles responded with a motion to dismiss for failure to prosecute.

The court granted the attorneys' motion to withdraw. Considering the peculiar circumstances of the case, the court also decided to honor Garland's request for an ex parte conference with the court. Dr. Peebles renewed his motion to dismiss for failure to prosecute.

The court took the motion under advisement pending the interview with Garland.

Because Hicks was still an attorney of record for Garland, the court notified Hicks that it intended to confer with Garland. Hicks then renewed his motion to withdraw. The court denied the motion because its preconditions for consideration of such a motion had not been fulfilled.

The court met with Garland in the afternoon on November 4. The court began the conference by explaining certain ground rules. It informed Garland that she would be placed under oath, that the proceeding would be recorded by the court reporter, and that the court reserved the right to reveal the contents of the conference to Dr. Peebles, his attorneys, and all other attorneys involved in the case. Garland agreed to proceed under these rules.

During her conversation with the court, Garland disclosed the nature of the ethical conflict that had first developed with Hicks and then with her new attorneys. She explained that Hicks's motion to withdraw was prompted by her refusal to admit that she had lied to Dr. Bookout, whose office notes reflected that Garland told him that the lump in her breast had been present for two months when she visited him in February 1987. In Hicks' opinion, these notes either contradicted Garland's allegations that the lump had been present since she saw Dr. Peebles eighteen months earlier or indicated that she lied to Dr. Bookout about how long the lump had been there. To present Garland's case in an ethical manner and to have a chance of winning, Hicks had advised Garland that she would have to admit that she lied to Dr. Bookout because she was worried about her medical expenses being covered by insurance.

Further, Garland told the court that two nights before trial was to begin her new attorneys had been presented with additional evidence regarding the same ethical conflict that had confronted Hicks. This evidence consisted of a report from Ms. Frame that indicated that the lump had been present for two months when Ms. Frame interviewed Garland in March 1987. Garland's new attorneys informed her that the report either corroborated Dr. Peebles's defense that Garland had told him the lump had disappeared or indicated that Garland had lied for insurance purposes.

In an order filed November 18, 1992, the district court found that Garland had revealed no information in the ex parte conference that cast doubt upon the propriety of her attorneys' request to withdraw. The court also found that Garland had not revealed anything to persuade the court to continue the case. Considering the case's history, the court determined that a continuance would not ensure that Garland would be ready for trial in the foreseeable future. The court stated that any further delay would work an unduly prejudicial hardship on Dr. Peebles. Accordingly, the court granted Dr. Peebles's motion to dismiss Garland's complaint with prejudice for failure to prosecute.

## II.

On appeal, Garland, still represented by the Hicks law firm, argues that the district court erred in dismissing her case for failure to prosecute. She contends that she did not engage in conduct that warranted such a dismissal. She argues that once the district court permitted her attorneys to withdraw, the court should have either called the case for trial, allowing her to proceed *pro se*, or continued the case.

■ A dismissal for failure to prosecute is proper when there has been "a clear record of delay or contumacious conduct by the plaintiff." *Brown v. Frey*, 806 F.2d 801, 803 (8th Cir.1986). We review a district court's dismissal for failure to prosecute under the abuse of discretion standard. *See, e.g., DuBose v. Minnesota*, 893 F.2d 169, 171 (8th Cir.1990). In reviewing a district court's decision, we balance the court's need to advance a crowded docket versus the consequences of denying a plaintiff his day in court. *See, e.g., Brown*, 806 F.2d at 804 (citing *Moore v. St. Louis Music Supply Co.*, 539 F.2d 1191, 1193 (8th Cir.1976)). We consider the nature of the conduct that prompted the dismissal and the adverse impact of such conduct upon both the defendant and the administration of justice in the dis-

trict court. *Id.* We also consider the availability of other less severe options. *See, e.g., Pardee v. Stock,* 712 F.2d 1290, 1292 (8th Cir.1983) (citing *St. Louis Music Supply,* 539 F.2d at 1193).

 Given the unusual circumstances of this case, we hold that the district court did not abuse its discretion by dismissing Garland's complaint. Garland engaged in conduct that prevented this case from going to trial. She created an ethical conflict that forced her attorneys to request to withdraw from her case. Against the advice of her attorneys, she refused to admit that she had lied to Dr. Bookout and Ms. Frame. By insisting that her case be tried in a manner that five attorneys found unethical, Garland was directly responsible for her case not going to trial on its scheduled trial date.

The court did not err by not allowing Garland to try her case *pro se.* Garland was extremely ill on the day trial was to begin (indeed, too ill to come to the courtroom that morning), so permitting her to proceed *pro se* was not a realistic option.

Likewise, the court did not err by not continuing the case. This action had been filed more than eighteen months earlier and had been continued several times. Even if the district court had granted another continuance, it is far from certain that the case would ever have gone to trial. During her conference with the court, Garland indicated that she was unwilling to change her mind concerning what she had told Dr. Bookout and Ms. Frame. A continuance would merely have given Garland more time to seek an attorney who would present her case in the manner she desired. Because five attorneys had found that they could not ethically present the case as Garland wanted it presented, it is highly unlikely that Garland could have found an attorney to present her case as she wanted it tried. Even if Garland could have succeeded in this task, her new attorney would not have been ready for trial for at least several months. As the district court properly recognized, another continuance would have prolonged Dr. Peebles's hardship after he and his attorneys had worked diligently to be ready for trial.

Accordingly, the dismissal with prejudice for failure to prosecute is affirmed.