Martha CHANCELLOR, by her attorney-in-fact, Norman Chancellor, Plaintiff,

v.

VAN BUREN H.M.A., INC. d/b/a Crawford Memorial Hospital; Rebecca Floyd, M.D.; Luis Cesar, M.D.; and Holt–Crock Clinic, P.L.C., Defendants.

No. CIV. 99–2066.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Aug. 31, 2000.

Martha Chancellor, Wheatland, MO, pro se plaintiff.

J. Michael Cogbill, Ledbetter, Hornberger, Cogbill, Arnold & Harrison, Fort Smith, AR, Kelly P. Carithers, Walter B. Cox, Davis, Cox & Wright, Fayetteville, Ar, C. Wayne Harris, Warner, Smith & Harris, Fort Smith, AR, for defendant.

### *ORDER OF DISMISSAL*

DAWSON, District Judge.

Currently before the court for consideration is the report and recommendation filed herein on August 18, 2000, by the Honorable Beverly Stites Jones, United States Magistrate Judge for the Western District of Ar-

kansas. (Doc. 60.) As Plaintiff Martha Chancellor filed objections to the report and recommendation (Doc. 62), the court has conducted a *de novo* review, *see* 28 U.S.C. § 636(b)(1), and concludes that the Magistrate's findings and recommendations are correct and proper and should be adopted.

On July 25, 2000, this court entered an order finding Plaintiff's competency to be in issue and directing Plaintiff to submit to physical and psychological examinations on August 1 and 2, 2000. (Doc. 59.) When Plaintiff failed to appear for the examinations, the Magistrate recommended dismissing Plaintiff's action for failure to comply with a court order. *See* Federal Rule of Civil Procedure 41(b).

■ In her objections to the Magistrate's report and recommendation, Plaintiff appears to take issue with the court's authority to order the examinations. Plaintiff characterizes as "reprehensible and unethical" efforts by court staff to schedule the physical examination with Plaintiff's treating physician, Dr. Kelly Trygg. Plaintiff attaches to her objections a letter from Dr. Trygg, in which Dr. Trygg indicates that court staff "threaten[ed]" to subpoena her to testify regarding Plaintiff's competency unless Dr. Trygg scheduled an appointment to conduct a physical examination of Plaintiff.

Plaintiff put her competency in issue when she submitted a letter to the court from Dr. Trygg suggesting that she could neither physically nor mentally meaningfully participate in the proceedings in this case. (Doc. 29 Attach.) The court had cause to question Dr. Trygg's assessment when Plaintiff subsequently submitted a videotape of herself to the court, which gave the court its first opportunity to observe Plaintiff's lucidity and behavior, as she had never appeared before the court. (Docket Entry 8/29/00.) In the videotape, Plaintiff appeared capable of comprehending the proceedings and asserting her own opinions and wishes in regard to this case. As a factual issue existed regarding Plaintiff's competency, the court found it necessary to conduct further inquiry. *See Cyntje v. Government of the V.I.*, 95 F.R.D.

430, 431–32 (D.C.V.I.1982) (under Federal Rule of Civil Procedure 17(c), if factual issue exists regarding litigant's competency, court may conduct sua sponte inquiry and appoint doctor to conduct examination), *aff'd*, 782 F.2d 1027 (3rd Cir.1985). The court therefore contacted Dr. Trygg and gave her the option of either (1) appearing before the court by subpoena to testify as to whether Plaintiff was physically able to travel approximately 250 miles to attend the trial in this case and participate in the two to three-day trial, or (2) scheduling an examination with Plaintiff and submitting a written report to the court regarding these matters. Dr. Trygg chose the latter option.

■ Turning to Plaintiff's other objections to the Magistrate's report and recommendation, Plaintiff asserts that she did not receive the order directing her to submit to the examinations until "one and one-half days" before she was scheduled to appear for them. Plaintiff states that she does not consider this "'ample notice'" of the examinations. The court went to great lengths to ensure that Plaintiff received the order at issue as quickly as possible after it was entered. Specifically, the court sent the order by facsimile, by federal express, and by regular mail. While the federal express package was returned as undeliverable because no one ever answered the door on three delivery attempts[1] (Docket Entry 8/8/00), and while Plaintiff allegedly did not receive the last page of the facsimile transmission of the order, Plaintiff acknowledges that, by July 26, 2000, she received facsimiles of the pages of the order directing her to appear for the examinations. (Attach. A.) Thus, Plaintiff had at least five days notice of the examinations. We note; with regard to the court-ordered psychological examination, Plaintiff acknowledges that she actually had close to two-weeks notice of this examination, as she received a letter from the psychologist's office on July 20, 2000, advising her that an appointment had been made for her on August 2, 2000. (Doc. 62 at page 5.) In any event, the court concludes that even if Plain-

---

**1.** The court notes that Federal Express' documentation is somewhat confusing, but, upon careful examination, it appears that there were only three delivery attempts, not five as stated by the Magistrate in her report and recommendation.

tiff had, as she contends, only one and a half days notice of the examinations, she has failed to demonstrate why this was not sufficient. Accordingly, the court finds no cause excusing Plaintiff's failure to appear for the scheduled examinations.

■ We next address whether Plaintiff's failure to appear for the examinations warrants dismissal of her action. The proceedings in this case have been long and protracted, with no progress being made towards actually readying the case for trial. The alleged instances of medical malpractice forming the basis for this action occurred in 1994, more than six years ago. Plaintiff originally filed her suit in state court in 1996, but was granted a nonsuit of this action in 1998. (Doc. 1 at page 1.) In a letter to Plaintiff's husband—which letter Plaintiff submitted to the court—Plaintiff's counsel in the state-court action stated:

> [Y]ou will not permit direct contact with either you or Martha. Nor ... will you inform me as to either you or Martha's whereabouts. And although I have on numerous occasions given you my home number and fax number and advised that you could call me collect, you have refused to do so. In fact I have expressed a necessity of meeting with you and Martha in person to discuss this case, and you have refused even that request. As such, the only way to reach you is by mail or indirectly through Mary, [Plaintiff's sister-in-law], by fax when she is available to turn her fax machine on. You must agree with me that this makes timely communications impossible.... I now for the third time am requesting authorization to enter into settlement negotiations without further delay.... Martha's case is not over and settlement negotiations remain possible. However, if the opposing party becomes more aware than they already are that we are having difficulty controlling our client or that the client is making decisions regarding legal matters, Martha's chances for recovery are significantly reduced .... This is another reason why it is imperative that we meet as soon as possible to discuss this case and move on with Martha's best interests in mind. (Attach. B.)

Instead of pursuing her case with this attorney, Plaintiff filed a bar complaint against him. (Attach. C.) Plaintiff thereafter retained new counsel and, in April 1999, re-filed her case in federal court. In January 2000, Plaintiff's new counsel moved to withdraw. (Doc. 21.) From letters written by Plaintiff's counsel, which again Plaintiff submitted to the court, it appears that Plaintiff's counsel sought to withdraw because Plaintiff and her husband would not cooperate in their counsel's attempt to schedule depositions and were "second guess[ing] everything [counsel did], looking for some ulterior motive." (Attach. D.) Specifically, it appears that Plaintiff questioned counsel's motive in urging Plaintiff to discontinue her bar complaint against her former counsel. Counsel explained to Plaintiff:

> [I]t does appear that there has been a substantial amount of beneficial work done [by former counsel] ... and my recommendation to not pursue [the bar complaint] is based substantially upon the fact that you have enough problems to deal with without increasing your burden. I would like to see your life simplified and not complicated. Regardless of what you choose to do in this regard, ultimately that is your decision, and I will respect that. (Attach. E.)

When Plaintiff continued to question counsel's motives (Attach. F), counsel filed the motion to withdraw. Plaintiff concurred in her counsel's motion to withdraw and asked the court to "grant her ample time to retain new legal representation." (Doc. 63.)

The court granted the motion to withdraw in February 2000. (Doc. 23.) Plaintiff then began barraging the court with countless items of correspondence and requests, seeking assistance in obtaining information regarding her case from her former attorneys. The court notes that on one occasion, court staff actually obtained and sorted through these attorneys' voluminous files on the case and made copies of a multitude of requested documents for Plaintiff. On April 6, 2000, the court held a status hearing in the case to determine the status of discovery and Plaintiff's attempts to retain counsel, but neither Plaintiff nor her husband or sister-in-law, who, at this point, were purporting to act on Plaintiff's behalf, appeared. (Doc. 25.)

In May 2000, the court officially granted Plaintiff's husband permission to pursue this action on his wife's behalf, as he submitted the letter mentioned above from Plaintiff's treating physician suggesting that Plaintiff could not meaningfully participate in the proceedings. (Doc. 37.) The court advised Mr. Chancellor, however, that he could not proceed pro se. *See Johns v. County of San Diego,* 114 F.3d 874, 876 (9th Cir.1997) (while non-attorney may appear pro se on his own behalf, he has no authority to appear as an attorney for others than himself; thus, parent could not bring action on behalf of minor child without retaining a lawyer); *Meeker v. Kercher,* 782 F.2d 153, 154 (10th Cir.1986) (per curiam) (same); *see also Turner v. American Bar Ass'n,* 407 F.Supp. 451, 475 (N.D. Tex., W.D. Pa., N.D. Ind., D. Minn., S.D. Ala., and W.D. Wis.1975) (noting that courts have consistently held that non-lawyers, including attorneys-in-fact and other proxies, may not represent other parties).

The court therefore ordered Mr. Chancellor to either retain counsel or request the appointment of counsel by June 12, 2000, and warned him that his failure to do so could result in the dismissal of this action. As of this date, six months have elapsed since Plaintiff's former attorneys withdrew from this case, yet Mr. Chancellor has still failed to retain counsel. As noted in a previous order (Doc. 59), the court even put Mr. Chancellor in contact with an attorney willing to take Plaintiff's case, but Mr. Chancellor has not chosen to retain this attorney.

The court finds no other option at this juncture but to dismiss this case. If Plaintiff were competent to act on her own behalf, she could proceed with this action without an attorney. Plaintiff contends, however, that she cannot meaningfully participate in the court proceedings. The court cannot resolve the issue of Plaintiff's competency because, as detailed above, Plaintiff failed to submit to the court-ordered examinations. The court will not simply assume that Plaintiff is incompetent and allow Mr. Chancellor to act on her behalf, as Mr. Chancellor has failed to retain counsel and he cannot act on Plaintiff's behalf without counsel.

The only other option available to the court would be to appoint a guardian ad litem to pursue this action on Plaintiff's behalf. The court is not inclined to do this for two reasons. First, the court believes that the abovementioned videotape of Plaintiff demonstrates that while she may not be physically and mentally able to *actively participate* in the proceedings in this case, she is capable of comprehending the proceedings and asserting her own opinions and wishes in regard to the case. The court therefore believes that Plaintiff has made the conscious choice to have her husband, Mr. Chancellor, act on her behalf and has chosen to continue to allow him to do so despite his failure to comply with the court's order to retain counsel. The second reason the court is not inclined to appoint a guardian ad litem is because Plaintiff has indicated that she does not wish to have a court-appointed lawyer. (Attach. G.)

■ The court recognizes the extreme importance of giving every litigant his or her day in court and the court has gone to exhaustive measures in trying to accomplish this in the instant action. Due to Plaintiff's conflicts with her attorneys and failure to comply with court orders, however, this case is no closer to going to trial than it was four years ago when Plaintiff first filed suit in state court. The court must weigh the policy of giving Plaintiff her day in court against the policies of preventing undue delay, avoiding court congestion, and preserving respect for court procedures. *See Garland v. Peebles,* 1 F.3d 683, 686 (8th Cir.1993). While the Plaintiff has certain rights, she does not possess all of the rights in this case. Each Defendant is entitled to have any liability against it adjudicated and concluded. The court believes that the degree of Plaintiff's egregious conduct and the adverse impact of her conduct upon Defendants and the administration of justice warrants dismissal of her action. *See id.* at 686–87.

Based on the foregoing, Plaintiff's action is hereby dismissed for failure to prosecute and failure to comply with court orders. *See* Federal Rule of Civil Procedure 41(b).